William W. NEAL, M.D.,
Plaintiff-Appellant,

v.

Harry N. WALTERS, Administrator of the United States Veterans Administration, et al., Defendants-Appellees.

No. 83–1577.

United States Court of Appeals,
Fifth Circuit.

Dec. 28, 1984.

Before RUBIN, POLITZ, and GAR-WOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge: *

The Veteran's Administration reassigned a physician who was head of a hypertension unit to another position with like rank and status but with duties that do not demand as much of his expertise and that might well be considered more routine and less rewarding professionally. The doctor asserts that, although no charges were filed against him, the reassignment was in fact based on charges of his inaptitude or inefficiency and that, under 38 U.S.C. § 4110, he is entitled to a hearing by a disciplinary board before he is reassigned. We affirm the rule that a physician cannot be deprived of his statutory right to a disciplinary board hearing by the pretext that a reassignment is a functional reorganization instead of disciplinary action, even when he suffers no reduction in rank or status. We conclude, however, that, on the facts found by the district court, which are amply supported by the record, the reassignment of Dr. Neal was not disciplinary in nature, and we, therefore, affirm the judgment.

I.

By statute, a Veterans Administration (VA) physician has the right to a disciplinary board hearing before disciplinary action may be taken against him when he is charged with inaptitude, inefficiency, or misconduct.[1] By regulation, a VA physi-

Thompson & Knight, Stephen F. Fink, Dallas, Tex., for plaintiff-appellant.

James A. Rolfe, U.S. Atty., Charles Ory, Asst. U.S. Atty., Dallas, Tex., for defendants-appellees.

* Some of the numerous issues raised on appeal do not have precedential value. Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens the legal profession." Pursuant to that rule, the Court has determined that the non-precedential portions of this opinion should not be published. The place at which the published opinion omits part of the lengthy unpublished opinion is indicated by asterisks.

1. 38 U.S.C. § 4110 reads in pertinent part:
(a) The Chief Medical Director, under regulations prescribed by the Administrator shall from time to time appoint boards to be known as disciplinary boards, ... to determine upon notice and fair hearing charges of inaptitude, inefficiency, or misconduct....
(d) A disciplinary board, when in its judgment charges are sustained, shall recommend suitable disciplinary action, within limitations prescribed by the Administrator, which shall include reprimand, suspension without pay,

cian has certain administrative due process rights, including the right to a review or a hearing, when he is reassigned to new duties within the same facility.[2] In this case, we face the question whether Dr. William W. Neal, a tenured VA physician,[3] was denied his statutory right to a disciplinary board hearing before being reassigned to new duties at the Dallas VA Medical Center (DVAMC). Dr. Neal claims that, although no formal charges of inaptitude, inefficiency, or misconduct were filed against him and his salary and rank were not reduced, his reassignment was disciplinary in nature and was based upon implied charges relating to his conduct and aptitude as Coordinator of the Hypertension Unit at DVAMC. Dr. Neal contends that the district court's finding of fact to the contrary is clearly erroneous and that its findings of fact were tainted by an error of law.

\* \* \* \* \* \*

Claiming that the district court's findings of fact are clearly erroneous, Dr. Neal contends that the reassignment was in reality disciplinary action based on concealed charges of inefficiency and he was entitled to a disciplinary board hearing before reas-signment. He also contends that the district court's legal conclusion that he had no right to a § 4110 disciplinary board hearing because the action taken was not adverse, in the sense that it entailed a reduction in rank, suspension, removal, or reduction in pay or grade, is an erroneous view of the law, which tainted the district court's other findings of fact.

## II.

Neither § 4110 nor the VA Policy Manual speak explicitly to Dr. Neal's case, and we are, therefore, called upon to fill in the interstices of the statutory and regulatory scheme. Section 4110 provides a VA physician with the right to demand a disciplinary board hearing when he is charged with inaptitude, inefficiency, or misconduct, before any disciplinary action is taken against him, and, if such charges are sustained, allows the disciplinary board to recommend "suitable disciplinary action."[4] The grievance provision in the VA Policy Manual accords a VA physician who is dissatisfied with a reassignment within the same facility the right to file a grievance[5] and the right to a review and an explanation of the reassignment if it has resulted in no reduc-

---

reduction in grade, and discharge from the Department of Medicine and Surgery of such person.

Other professionals listed in 38 U.S.C. § 4104(1) have the same rights.

2. VA Dep't of Medicine & Surgery Policy Manual, DM & S Supp., MP–5, Part II, Chapter 11, § 11B.07, reads in pertinent part:

c. *Employee Dissatisfaction with Reassignment or Change of Duty Assignment*

(1) If an employee ... is dissatisfied with a reassignment or change of duty assignment not involving a reduction in rank or salary, the employee may discuss this dissatisfaction with the service chief, or designee. If the employee feels that the explanation given is not satisfactory, the employee may then discuss the reassignment ... with the Chief of Staff, and if still not satisfied, may request in writing that the action be reviewed by the health care facility Director. After giving full consideration to the employee's reasons for dissatisfaction, the director will advise the employee of the decision.

....

(3) An employee ... who is dissatisfied with a reassignment ... involving a reduction in rank or salary, may submit a grievance under the provisions of MP–5, part II, chapter 8, section B. The employee will be entitled to a hearing in the grievance procedure. If during the hearing it is determined that the reason for the reassignment ... is inaptitude, inefficiency, or misconduct, action will be taken under the disciplinary action procedures of chapter 8, section A. The employee will be entitled to a Disciplinary Board hearing. No reassignment ... involving a reduction in rank or salary will be effected until the grievance or, where appropriate, the proposed action under the provisions of chapter 8, section A, is decided....

This grievance provision is not the implementing regulation for 38 U.S.C. § 4110. The statute's implementing regulation is contained in the VA Dep't of Medicine & Surgery Policy Manual, MP–5, Part II, Trans. 9, Chapter 8, Section A.

3. *See* 38 U.S.C. § 4106.

4. *See supra* note 1.

5. *See supra* note 2.

tion in rank or salary.[6] If the reassignment involves a reduction in rank or salary, the physician is entitled to a hearing as part of the grievance procedure.[7] Moreover, if during such a grievance hearing it is determined that the reason for the reassignment is an allegation of inaptitude, inefficiency, or misconduct, the physician is entitled to a disciplinary board hearing before reassignment.[8] No provision is made, therefore, for the case in which a physician suffers no reduction in rank or salary and no formal charges against him have been filed, but he is nevertheless reassigned as a disciplinary measure because his superiors find his aptitude, efficiency or conduct wanting.

Although it is undeniable that VA medical center officials have broad authority to organize and operate medical center programs in order to ensure their proper and efficient management,[9] this authority is not so broad as to allow these officials to violate a physician's statutory right to a disciplinary board hearing by reassigning him to a new position when they are dissatisfied with his performance in order to avoid filing formal charges against him. Indeed, the VA, in its brief, states that a reassignment on the basis of implied charges would violate a physician's statutory right to a disciplinary board hearing, and the grievance provision in the VA Policy Manual acknowledges that a physician who has filed a grievance is entitled to a disciplinary board hearing if, during the grievance hearing, charges of inaptitude, inefficiency, or misconduct surface as the reason for his reassignment.[10]

Noting that the procedural safeguards of § 4110 could not be evaded merely by transferring a physician to another institution, the Second Circuit held, in *Kletschka v. Driver*,[11] that a physician ordered transferred to another duty station has a right to a disciplinary board hearing if he can prove that his transfer was disciplinary in nature, and, upon adducing such proof, would be entitled to declaratory or injunctive relief entitling him to the statutory procedural protection.[12] A district court reached a similar result in *Gilbert v. Johnson*,[13] in which it held that a physician was entitled to a disciplinary board hearing on evidence that, without the filing of charges, he had been stripped of his supervisory position, reassigned to a menial position unrelated to his specialty in cardiothoracic surgery, transferred to another duty station, and terminated ·upon refusing reassignment.

■ We again state the rule to be deduced from these cases and the Policy Manual: a physician who proves that the action taken against him without the filing of charges was in effect an effort to discipline him for suspected inaptitude, inefficiency, or misconduct has the same statutory rights as if a formal charge had been filed. The Veterans Administration may not evade the statutory due-process requirement by the pretext of articulating a non-disciplinary reason for a proposed employment action. As the Second Circuit noted in *Kletschka*, enforcement of the doctor's right to a hearing does not imply that the court will make the final decision on the merits of the case.[14] What is enforced is the right to have a disciplinary board deter-

**6.** *Id.*

**7.** *Id.*

**8.** *Id.*

**9.** *See* VA Organizational Manual M–00–1, Change 11, July 30, 1981, at X–75, § 1010.1.

**10.** *See supra* note 2.

**11.** 411 F.2d 436 (2d Cir.1969).

**12.** *Id.* at 446.

**13.** *See Gilbert v. Johnson,* 601 F.2d 761, 764 (5th Cir.1979) (quoting the district court's 1972 order), *aff'g in part and rev'g in part* 419 F.Supp. 859 (N.D.Ga.1976), *cert. denied sub nom., Gilbert v. Cleland,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). We did not review this order for, before the appeal was taken, a disciplinary board hearing was held. *See also Gilbert v. Johnson,* 490 F.2d 827, 829 (5th Cir.1974) (directing district court to enforce its 1972 judgment and order).

**14.** *See* 411 F.2d at 444–45.

mine both whether the doctor's performance is wanting as charged, expressly or impliedly, and, if so, the disciplinary action to be taken.

■ The district court, therefore, correctly stated the law when it concluded that a VA physician "is entitled to a 'fair hearing' before any proposed adverse employment action based upon 'charges of inaptitude, inefficiency, or misconduct' becomes effective," so long as we broadly construe "adverse employment action" to mean "disciplinary or punitive employment action."[15] The district court erroneously stated the law, however, when it narrowly defined "adverse action" to mean only "a reduction in rank, suspension, removal, or reduction in pay or grade."

As the Court of Claims noted in *Fucik v. United States*,[16] the meaning of "adverse action," as interpreted by federal regulations applicable to Title 5 (Civil Service) employees,[17] is not as broad as the meaning of "disciplinary action," as used in § 4110, which applies to Title 38 (VA professional) employees. As used in the Civil Service regulations, the term is technical, including only termination, reduction in pay or rank, suspension, and furlough without pay.[18] As used in the statute applicable to VA professionals, the same words also include transfers and reassignments effected for a disciplinary purpose on grounds of inefficiency, inaptitude or misconduct. The statute itself suggests that disciplinary actions are not confined to reduction in rank, suspension, removal, or reduction in pay or grade.[19] Thus, a transfer or reassignment that is an implied reprimand or that, for disciplinary reasons, denies a physician the opportunity to practice in a specialty for

which he is credentialed would entitle him to a disciplinary board hearing under § 4110,[20] but would not necessarily entitle a Title 5 employee to the same or similar protections under adverse action procedures.[21]

Considering the statutory and regulatory scheme and the statutory protection accorded VA physicians who face implied charges of inaptitude, inefficiency, or misconduct, we address Dr. Neal's contentions that the district court's findings of fact are clearly erroneous; that, consequently, he is entitled to a disciplinary board hearing; and that the district court's error of law tainted its findings of fact.

### III.

The district court found that the decision to reassign Dr. Neal was not based on his inaptitude, inefficiency, or misconduct, but was based on the administration's desire to make the hypertension program more efficient and effective in its treatment of veterans. To counter this, Dr. Neal recounts statements and actions of his superiors that might lead to the inference that his reassignment was due to their dissatisfaction with his performance. DVAMC, however, also presented a significant amount of evidence showing that VA officials found the administrative organization of the Hypertension Unit to be inefficient, and that they sincerely believed that the reorganization would provide more efficient services to hypertensive veterans.

■ It is not our province to retry cases. Indeed, we are forbidden to do so by Fed.R. Civ.P. 52(a), which commands us to accept the district court's findings of fact unless

---

**15.** *See Kletschka*, 411 F.2d at 445; *see also* 38 U.S.C. § 4110(d) (noting that "disciplinary action" includes "reprimand, suspension without pay, reduction in grade, and discharge"). Although 38 U.S.C. § 4110(d) lists a number of actions that count as "disciplinary actions," the statute does not preclude the possibility that other employment actions might be disciplinary in nature. We express no opinion on whether or what other kinds of actions might be seen as disciplinary.

**16.** 655 F.2d 1089 (Ct.Cl.1981).

**17.** *See* 5 C.F.R. § 752.301 (1984).

**18.** *See Fucik*, 655 F.2d at 1096.

**19.** *See supra* note 15 and accompanying text.

**20.** *See, e.g., Kletschka*, 411 F.2d at 445; *Gilbert*, 601 F.2d at 764–65.

**21.** *See Fucik*, 655 F.2d at 1096.

they are "clearly erroneous." The same rule exacts our respect for the district court's observation of the witnesses and its conclusions concerning their credibility. The Supreme Court has, therefore, only recently reaffirmed the weight to be given fact findings, especially when, as in this case, the key factual issue is the motivation of the defendant.[22] We are not to disregard a trial court's findings unless we have the definite and firm conviction that they are in error.[23]

We understand and sympathize with Dr. Neal's objection to his reassignment. Instead of being able to continue to specialize in hypertension, he will spend much of his time doing routine physical examinations. While he will be allowed to continue to treat the patients presently under his care, that number will necessarily dwindle. In his own eyes and likely in the eyes of his peers, his status will have been reduced. Nonetheless, Dr. Neal is in a classified service whose regulations carefully define his rank and the specialty for which he is credentialed. The personal desires and professional aspirations of doctors in VA service must necessarily be to some extent subordinate to the efficient management of its program, so long as their tenure and rank, as defined by statute and regulations, are respected and they are not the victims of a pretext that conceals discipline as a basis for personnel actions involving them.

■ The Director of the VA Medical Center is responsible for its "proper and efficient management."[24] The Director of DVAMC testified that he was convinced that the hypertension clinic, as it had been operating, did not employ personnel in the most efficient way, was not an effective means of healing or treating hypertensive patients, and that it was preferable to extend treatment to a much larger number of veterans instead of providing long-term care for a limited number. The reorganization plan he eventually adopted would, in his opinion, afford primary care to hypertensive patients by physicians rather than by their assistants. A greater number of hypertensive veterans would be evaluated and treated by a larger staff. The trial court credited this testimony. We are not in a position to substitute our judgment of the management plan for the director's or our evaluation of the witnesses' credibility for the trial court's. As the Supreme Court recently noted, an "appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court 'might give the facts another construction, resolve ambiguities differently, and find a more sinister cast to actions which the District Court apparently deemed innocent.' "[25]

Although Dr. Neal has adduced, and in his appellate brief ably mustered, evidence from which it might well be concluded that the motive for his reassignment was not the improvement of the care afforded patients by the Center but was an unvoiced charge of inefficiency, inaptitude, or misconduct, we are not persuaded that the district court's findings of fact should be discredited.

Although some evidence does support Dr. Neal's contention that the VA went out of its way to arrange his final reassignment so that he did not suffer a reduction in rank in order to avoid the possibility that he would assert grievance rights, the Director of DVAMC testified that his reas-

**22.** *Cf. Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 79 (1982) (holding that finding on intent to discriminate on account of race "is a pure question of fact, subject to Rule 52's clearly erroneous standard").

**23.** *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606, 616 (1982) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

**24.** VA Organizational Manual M–00–1, Change 11, July 30, 1981, at X–75, § 1010.1.

**25.** *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 857, 102 S.Ct. 2182, 2190, 72 L.Ed.2d 606, 618 (1982) (quoting *United States v. Real Estate Boards,* 339 U.S. 485, 495, 70 S.Ct. 711, 717, 94 L.Ed. 1007, 1015 (1950)).

signment was changed because of Dr. Neal's desire to maintain his supervisory status. In either case, Dr. Neal has not proved that his ultimate reassignment was disciplinary. The change in his reassignment is equally subject to the interpretation that it was designed to avoid a lengthy administrative dispute. Dr. Neal concedes that he might have been removed from his position as Coordinator of the Hypertension Unit and assigned to doing VA employee physical exams, completely without recourse, for any reason except accusations about his professional aptitude, efficiency, or conduct. The trial court's findings demonstrate that the reassignment of Dr. Neal did not stem from such accusations and, therefore, are not clearly erroneous.

The trial court's narrow interpretation of "adverse action" did not taint its finding that Dr. Neal's reassignment was not disciplinary or based upon his inefficiency, inaptitude, or misconduct. The court made separate findings of fact that support the latter conclusion without regard to the former, independent conclusion that Dr. Neal's new position did not entail a reduction in rank or status. Unlike the cases that Dr. Neal cites [26] in which the courts so misunderstood the issues that their findings did "not really resolve the critical issues," [27] the district court, in its findings of fact, recounted ample evidence to support each conclusion and to show that it considered each fully and independently.

For these reasons, the judgment is affirmed.

---

**26.** *See Corley v. Jackson Police Dep't,* 566 F.2d 994 (5th Cir.1978); *Fromberg, Inc. v. Thornhill,* 315 F.2d 407 (5th Cir.1963).

**27.** *Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 409 (5th Cir.1963); *see also Corley v. Jackson Police Dep't,* 566 F.2d 994, 999–1001 (5th Cir.1978) (judge did not reach the issue of pretext in discrimination case and "stopped short of the fact finding and legal analysis required for resolution of this case").