892 F.2d 653
 58 USLW 2427
 Donald W. HANNON, M.D., Plaintiff-Appellee,
v.
Thomas K. TURNAGE, Administrator of the Veterans
Administration, and John Gronvall, Chief Medical
Director of the Veterans Administration,
Defendants-Appellants.
 No. 88-2130.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 11, 1989.
Decided Jan. 4, 1990.
Rehearing and Rehearing En Banc Denied Feb. 13, 1990.
 
 Mary A. Sedey, Patricia L. Cohen, St. Louis, Mo., Bruce Goldstein, Edwardsville, Ill., for plaintiff-appellee, Hannon.
 Frederick J. Hess, U.S. Atty., Robert L. Simpkins, Asst. U.S. Atty., Office of U.S. Atty., East St. Louis, Ill., Barbara L. Herwig, and Peter R. Maier, Dept. of Justice, Civ.Div., Appellate Section, Washington, D.C., for defendant-appellants.
 Before BAUER, Chief Judge, WOOD, Jr. and FLAUM, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Dr. Donald W. Hannon brought this action challenging the termination of his employment as chief of surgery at the Veterans Administration Medical Center ("VAMC") in Marion, Illinois. Dr. Hannon contends that Thomas K. Turnage, administrator of the Veterans Administration ("VA"), and Dr. John Gronvall, chief medical director of the VA, deprived him of liberty and property without due process of law when they discharged him from his position.
 
 
 2
 Turnage and Gronvall moved for summary judgment on the grounds of qualified immunity. The district court had jurisdiction over Dr. Hannon's claim under 28 U.S.C. § 1331. We have jurisdiction to hear this interlocutory appeal of a denial of qualified immunity on a motion for summary judgment under the principles of 28 U.S.C. § 1291 and Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The district court denied Turnage and Gronvall's motion, and they now appeal. For the reasons stated below, we reverse.
 
 I. FACTUAL BACKGROUND
 
 3
 In 1979, Dr. Hannon applied for an appointment as a staff surgeon at the VA hospital in Grand Junction, Colorado. At that time, federal statute and VA regulations required all VA physicians to have full, unrestricted state licenses. See 38 U.S.C. § 4105(a)(1); DM & S Supplement to VA Manual MP-5, pt. II, p 2.04(h)(1). When Dr. Hannon applied for the staff surgeon position, he did not have an unrestricted license. Although Dr. Hannon had previously possessed unrestricted licenses in the states of California, Washington, and Minnesota, disciplinary action had revoked, suspended, or inactivated all of these licenses. It was not until 1986 that Dr. Hannon once again received a full, unrestricted license from the state of Minnesota.
 
 
 4
 Dr. Hannon's VA application specifically asked if he ever had a license to practice revoked or suspended. Dr. Hannon left the response to this question blank. Nowhere on the application did Dr. Hannon disclose the state disciplinary proceedings. The application forms required Dr. Hannon to certify that his answers were true and complete to the best of his knowledge and belief.
 
 
 5
 The VA subsequently appointed Dr. Hannon to a position as staff surgeon at the VA hospital in Grand Junction, Colorado. The VA later transferred him to facilities in Michigan, Texas, and Illinois. In 1983, the VA promoted Dr. Hannon to chief of surgical service at the VAMC in Marion, Illinois.
 
 
 6
 Prompted by charges of incompetent doctors in VA hospitals, the VA's Office of Inspector General began a 1986 nationwide audit of the licensure status of all VA doctors. The audit intended to trace all disciplinary actions involving VA doctors. As a result of the audit, the VA's Central Office made inquiries into Dr. Hannon's licensing history. The above facts were provided to the VA's general counsel who advised that the VA's own regulations required Dr. Hannon's discharge because Dr. Hannon failed to meet the appropriate qualifications at the time of appointment. Thus, on June 23, 1986, Dr. Hannon's supervisor informed him that he was terminated effective that same day. Dr. Hannon was not provided with prior written notice of the discharge decision, written reasons for his termination, any kind of a hearing, or a chance to respond to the charges against him. The director of the VAMC stated to the media only that Dr. Hannon was no longer employed there and that the media would have to obtain further information from Dr. Hannon directly.
 
 
 7
 Almost four months after Dr. Hannon's discharge, the VA released the Report of the Audit of the Inspector General. This document published the results of the audit that eventually led to Dr. Hannon's termination. The report did not mention any doctor by name or even identify geographic regions. Based on the report, the news media published stories that sixty percent of the VA doctors with licensing problems were disciplined for drug abuse or laxity in drug prescription and that twenty-four VA doctors had their licenses suspended or revoked chiefly for drug-related misconduct.
 
 
 8
 In February 1987, Dr. Hannon tried to obtain $30,000 in retirement funds. The Office of Personnel Management turned down this request after learning from the VA the reason for Dr. Hannon's termination.
 
 
 9
 Dr. Hannon then brought this suit, alleging that the defendants deprived him of property and liberty interests without due process in violation of the fifth amendment. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The defendants moved for summary judgment on the basis of qualified immunity, and the district court denied this motion. The district court reasoned that Dr. Hannon was a nonprobationary employee. Considering Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) dispositive, the district court rejected the defendants' argument that a person "who is illegally appointed by dishonestly filling out an employment application has no property right." In addition, the district court found that the VA's limited dissemination of the circumstances surrounding Dr. Hannon's dismissal implicated his liberty interests. Because the defendants moved for summary judgment on the basis of qualified immunity, the trial court did not consider whether Dr. Hannon had pleaded any statutory causes of action.[1]
 
 II. DISCUSSION
 
 10
 The defendants contend that they did not violate any of Dr. Hannon's clearly established rights and are thereby entitled to qualified immunity. The defendants alternatively argue that they took no personal action that could have exposed them to liability. Because we agree that the defendants did not violate any of Dr. Hannon's clearly established rights, we do not reach the other issue.
 
 A. General Principles
 
 11
 The doctrine of qualified immunity shields government officials from litigation for discretionary functions. See Klein v. Ryan, 847 F.2d 368, 371 (7th Cir.1988); see also Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Officials cannot receive qualified immunity if their conduct violates clearly established constitutional rights, such that "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); see also Harlow, 457 U.S. at 818, 102 S.Ct. at 2738; Conner v. Reinhard, 847 F.2d 384, 387-88 (7th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988). One recent commentator has suggested that the law is unclear and the burden should be on the defendant to establish the lack of a clearly established right. See Kinports, Qualified Immunity in Section 1983 Cases: The Unanswered Questions, 23 Ga.L.Rev. 597, 634-42 (1989). Since the Supreme Court's decision in Davis v. Scherer, 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984), the law in this circuit has been well settled that the plaintiff bears the burden of proving a clearly established right. See, e.g., Lenea v. Lane, 882 F.2d 1171, 1177 (7th Cir.1989); Alvarado v. Picur, 859 F.2d 448, 452 (7th Cir.1988); Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir.), cert. denied, --- U.S. ---- 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); Klein, 847 F.2d at 371; Conner, 847 F.2d at 388; Abel v. Miller, 824 F.2d 1522, 1534 (7th Cir.1987); Kompare v. Stein, 801 F.2d 883, 892 (7th Cir.1986); LeClair v. Hart, 800 F.2d 692, 696 (7th Cir.1986).
 
 
 12
 Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When we review the denial of a motion for summary judgment on the basis of qualified immunity, our inquiry is limited solely to the issue of whether the law was well established at the time of the relevant conduct. Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985); Conner, 847 F.2d at 388; Klein, 847 F.2d at 371.
 
 B. Property Interest
 
 13
 Dr. Hannon has not proved the existence of any property right that the defendants might have violated, let alone proved the existence of a clearly established right.
 
 
 14
 For Dr. Hannon to defeat the defendants' claim of qualified immunity, he must show that he had a clearly established property interest in continued employment with the VA. See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) (requirements of procedural due process only encompass the Constitution's protection of life, liberty, and property). When the government gives its employees assurances of continued employment a property interest arises. See R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance and Procedure § 17.5(d) (1986). The government usually manifests these assurances by laws and regulations. Thus, property interests are generally created and defined by laws and regulations, see Roth, 408 U.S. at 577, 92 S.Ct. at 2709, but can also arise through principles of contract law, see Vail v. Board of Educ., 706 F.2d 1435, 1437 (7th Cir.1983), aff'd, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984).
 
 
 15
 In this case, the government, acting through the VA, gave Dr. Hannon no assurances of continued employment. In 1979, when Dr. Hannon applied for the VA appointment, he did not meet the qualifications listed in the United States Code and the VA's own regulations. The VA was without authority to hire Dr. Hannon, and his appointment was void from the day he received it.[2] Dr. Hannon cannot now rely on this void appointment as an assurance of continued employment: the government's laws and regulations told Dr. Hannon that he had no right to his VA job.
 
 
 16
 Dr. Hannon argues that nothing in the record indicates he failed to meet the relevant qualifications at the time of his appointment. The defendants assert, by affidavit and supporting exhibits, that Dr. Hannon did not possess an unrestricted medical license at the time of his appointment. As the party moving for summary judgment, the burden is on the defendants to establish uncontroverted facts supporting their argument. The plaintiff, however, cannot rest on mere unsupported denials, and he must come forward with contradictory evidence of his own to establish a genuine issue of material fact. Anderson v. Liberty Lobby, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Smart v. State Farm Ins. Co., 868 F.2d 929, 931 (7th Cir.1989). Because courts should decide the issue of qualified immunity before proceeding with discovery, see Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 2815-16, 86 L.Ed.2d 411 (1985), the section 1983 plaintiff should not be required as a matter of routine to come forward with evidence contradicting the defendant's facts that support a claim of qualified immunity, cf. Anderson, 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 (nonmoving party may be relieved of its burden where discovery has not yet taken place); Fed.R.Civ.P. 56(f) (court may stay or deny motion for summary judgment where further discovery is necessary). In this case, Dr. Hannon controls the facts relevant to the inquiry of whether he possessed the necessary qualifications, and it would not burden him to produce these facts. Dr. Hannon, as the nonmoving party, cannot simply deny the defendants' facts when he could easily controvert them by coming forward with contradictory evidence.
 
 
 17
 We agree with the defendants that 38 U.S.C. §§ 4106, 4110 do not give Dr. Hannon a statutory entitlement to specified procedures before termination from his VA position. Section 4106 provides that certain VA-appointed health professionals shall serve a two-year probationary period and shall not be separated from the VA unless a review board finds them not fully qualified and satisfactory.[3] Evidently, Dr. Hannon argues that the completion of a two-year probationary period without separation from the VA gives him an entitlement to continued VA employment. However, section 4106 does not apply to persons invalidly appointed; the statute speaks only to persons with valid appointments. Section 4106 itself states that appointments "shall be made only after qualifications have been satisfactorily established in accordance" with VA regulations. 38 U.S.C. § 4106(a). Because Dr. Hannon's appointment was void ab initio, section 4106 does not apply to him.
 
 
 18
 Section 4110 is also inapplicable to this case.[4] Section 4110 requires the chief medical director of the VA to appoint disciplinary boards to hear charges of ineptitude, inefficiency, or misconduct.[5] Because the VA did not fire Dr. Hannon for any of these enumerated bases, the hearing rights of section 4110 do not apply. Dr. Hannon was not dismissed because of inaptitude, inefficiency, or misconduct but because his VA appointment was void.
 
 
 19
 Dr. Hannon also argues that an entitlement to his position arose through mutually explicit understandings between him and his superiors. A property interest can arise through legitimate and reasonable reliance on a promise from the government, see Perry v. Sinderman, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); Vail, 706 F.2d at 1440, and Dr. Hannon cites cases where courts found a fired government employee to have a property interest through informal assurances despite statutes, regulations, or operating procedures that ostensibly voided such a property interest, see, e.g., Vail, 706 F.2d at 1439 (teacher's two-year contract possibly beyond the power of school board); Soni v. Board of Trustees, 513 F.2d 347, 349 (6th Cir.1975) (foreign-born university professor had reasonable expectation of continued employment despite university regulation prohibiting aliens from holding tenured faculty positions), cert. denied, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). In none of these cases, however, did regulations or statutes completely nullify the validity of the plaintiff's appointment. Ruling for the plaintiff, the Vail court even found that continued employment of a schoolteacher would not have been an ultra vires act for the governmental defendant. Vail, 706 F.2d at 1439-40. Dr. Hannon's claim more closely resembles those cases where we have held that a government employee cannot receive reasonable assurances of continued employment from government officials that do not have the authority to give such assurances. See, e.g., Wolf v. City of Fitchburg, 870 F.2d 1327, 1333-35 (7th Cir.1989); Common v. Williams, 859 F.2d 467, 471-72 (7th Cir.1988); Smith v. Board of Educ., 853 F.2d 517, 521 (7th Cir.1988); Shlay v. Montgomery, 802 F.2d 918, 923 (7th Cir.1986). The VA had no authority to hire Dr. Hannon, and thus he could not legitimately rely on any assurances of continued employment.
 
 
 20
 Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) does not require a contrary result. In Loudermill, the defendant school board had fired the plaintiff from his job as a security guard. On his job application, the plaintiff untruthfully stated that he had never been convicted of a felony. The Supreme Court rejected the argument that a government employee obtains no property interest where the employment was obtained by lying on the job application. Id. at 539 n. 5, 105 S.Ct. at 1491 n. 5. The defendant in Loudermill had fired the plaintiff for falsifying his job application. Id. In the present case, Dr. Hannon was not fired for falsifying his job application but for failing to possess the necessary qualifications at the time of his appointment.[6]
 
 
 21
 The distinction between Loudermill and this case is crucial. In Loudermill, the school board had the authority to hire the plaintiff even if it had known about his criminal past. In other words, the Loudermill defendant was not prohibited by law from hiring the plaintiff. The VA, however, could not have hired Dr. Hannon had it known that he did not meet the statutory and regulatory requirements for appointment:[7] federal statutes and regulations barred the VA from properly hiring Dr. Hannon. Thus, even if it so desired, the VA could not give Dr. Hannon any legitimate assurances of continued employment.
 
 
 22
 The reasoning of Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169 (1st Cir.1988) is more persuasive to the facts of this case. The Kauffman plaintiffs had been appointed to government positions as political patronage. Eighteen months after their hire, these plaintiffs were dismissed on the grounds that their appointments were illegal. The First Circuit held that because the plaintiffs' appointments had occurred in violation of law, they were null and void. Id. at 1173. Thus, to the extent that the plaintiffs were hired on the basis of standards foreign to those set forth under Puerto Rican law, they could not benefit from the "property" status of their positions. Id. at 1174.
 
 
 23
 The Kauffman court likewise found Loudermill inapposite to the question of whether a government employee can acquire a property interest where the employee's appointment was invalid. Id. at 1175. Loudermill was distinguished on three grounds: (1) the issue of whether the plaintiffs had property interests in their positions was squarely before the court; (2) there were no unresolved factual issues regarding the plaintiffs' dismissal; and (3) there was a dispute over whether plaintiffs were ever properly hired. Id. With facts similar to Kauffman, we believe the present case to be likewise distinguishable from Loudermill. The issue of whether plaintiff had a property interest in his employment is squarely before this court. There are no unresolved factual issues regarding Dr. Hannon's dismissal: there is no question he failed to meet the qualifications at the time of his appointment. Most importantly, unlike Loudermill, there is a dispute over whether the VA properly hired Dr. Hannon in the first place. The VA had no authority to employ Dr. Hannon, making his appointment null and void.
 
 
 24
 Like the Kauffman plaintiffs, Dr. Hannon can claim no property interest in continued employment with the VA. Because Dr. Hannon had no property interest, he had no right to a hearing before discharge. It is axiomatic that without a right to a hearing, Turnage and Gronvall could not have violated any of Dr. Hannon's clearly established rights. Thus, the defendants are entitled to qualified immunity from Dr. Hannon's claim that they deprived him of property without due process of law.
 
 C. Liberty Interest
 
 25
 Dr. Hannon has likewise failed to clearly establish a liberty interest that was implicated when the defendants dismissed him. Because Dr. Hannon had no clearly established liberty interest, the defendants are entitled to qualified immunity.
 
 
 26
 The dismissal of a government employee can implicate a liberty interest. See Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). See generally R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance and Procedure § 17.4(d) (1986). But not every government discharge will involve a liberty interest. See Roth, 408 U.S. at 572-75, 92 S.Ct. at 2706-08. A government employee's dismissal infringes a liberty interest where "(1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities." Munson v. Friske, 754 F.2d 683, 693 (7th Cir.1985); accord Shlay v. Montgomery, 802 F.2d 918, 923-24 (7th Cir.1986); Zaky v. Veterans Admin., 793 F.2d 832, 840 (7th Cir.), cert. denied, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir.1986); Perry v. FBI, 781 F.2d 1294, 1300 (7th Cir.) (en banc), cert. denied, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). Dr. Hannon alleges that the VA infringed his liberty interest by disseminating information regarding his dismissal.
 
 
 27
 For Dr. Hannon to prevail, even assuming that any information surrounding his dismissal was sufficiently damning to implicate a liberty interest, the government must still have participated in the dissemination of this information to the public. Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); Shlay, 802 F.2d at 924. The only information released to the public by the VA was a statement by Dr. Hannon's superior that he was no longer employed at the VAMC and a report generally outlining licensing problems within VA medical facilities. This information can hardly be classified as stigmatizing or as a charge of gross misconduct; one permissible inference would even be that Dr. Hannon left the VAMC of his own volition. While some newspapers published reports more detailed than the information given out by the VA, there is no genuine issue of material fact that the VA did not provide these details,[8] and the VA is not responsible for information beyond that which it released.
 
 
 28
 Dr. Hannon also argues that the VA deprived him of a liberty interest when it provided the reason for his dismissal to the Office of Personnel Management ("OPM"). This information, however, was only provided after Dr. Hannon had asked the OPM for a refund of $30,000 in retirement funds. This argument fails for two reasons. First, except when interagency sharing of information stigmatizes the plaintiff throughout the federal government, see Larry v. Lawler, 605 F.2d 954, 958 (7th Cir.1978), there is generally no abridgement of a liberty interest when the government circulates information among a limited number of agencies for a specified purpose, see Perry, 781 F.2d at 1301. Second, when a plaintiff requests a government agency to release information to another agency, that plaintiff cannot later claim that the communication impaired a liberty interest. See Rich v. Secretary of the Army, 735 F.2d 1220, 1227 (10th Cir.1984). The VA's release of information to the OPM was for a specified purpose, and Dr. Hannon initiated this transfer of information by requesting retirement funds. Thus, Dr. Hannon cannot complain about the communications between the VA and the OPM.
 
 
 29
 Lacking a liberty interest, Dr. Hannon was without a right to due process when the VA disseminated the information surrounding his dismissal. Because Dr. Hannon had no clearly established rights, the defendants are entitled to qualified immunity on his claim that they deprived him of a liberty interest without due process.
 
 III. CONCLUSION
 
 30
 Because Dr. Hannon had neither a property interest in his employment nor a liberty interest in the circumstances surrounding his dismissal, the defendants are entitled to qualified immunity on his Bivens claims. Accordingly, we reverse the opinion of the trial court denying the defendants' motion for summary judgment and remand so that the trial court may enter judgment for the defendants.
 
 
 31
 REVERSED & REMANDED.
 
 
 32
 FLAUM, Circuit Judge, dissenting.
 
 
 33
 The majority would have this Court permit the Veteran's Administration ("VA") to deny a pre-termination hearing to an employee based on the VA's own subsequent determination that his appointment was initially in violation of VA regulations. Because Congress mandated in 38 U.S.C. §§ 4106 and 4110 that such determinations be made at a pre-termination hearing and not by ensuing administrative fiat, I respectfully suggest that a contrary result is warranted.
 
 
 34
 The Supreme Court, in Cleveland Bd. of Educ. v. Loudermill considered the termination of an employee of the Cleveland Board of Education who was fired from his job as a security guard. The employee had falsified his job application by stating that he had never been convicted of a felony when in fact he had been convicted of grand larceny. As part of their argument before the Supreme Court, the Cleveland Board of Education maintained that Loudermill had no property right in his continued employment because he had obtained the job by lying on his application. They argued that "had Loudermill answered truthfully he would not have been hired." Loudermill, 470 U.S. at 539 n. 5, 105 S.Ct. at 1491 n. 5. This is the same argument relied on by the majority. The majority holds that Dr. Hannon's appointment was void ab initio because he never held the qualifications necessary for the job. In other words, had the VA known of his lack of qualifications, Dr. Hannon could not have been hired.
 
 
 35
 The Supreme Court in Loudermill, however, firmly rejected this approach. The Court held:
 
 
 36
 [T]he argument relie[s] on a retrospective fiction inconsistent with the undisputed fact that Loudermill was hired and did hold the security job. The Board cannot escape its constitutional obligations by rephrasing the basis for termination as a reason why Loudermill should not have been hired in the first place.
 
 
 37
 Id. Dr. Hannon, like Loudermill was hired, paid, evaluated, and promoted. He performed work for the VA in exchange for benefits. Perhaps his hiring was in error, but the fact remains that he was hired and held a job. As an employee of the VA, he was entitled to the same rights and benefits as other employees, including his expectation of continued employment absent a hearing. The majority has, contrary to Loudermill, allowed the VA to "rephras[e] the basis for termination as a reason why [he] should not have been hired in the first place." Id.
 
 
 38
 This is not to say that the VA could not terminate Dr. Hannon on the grounds that he failed to hold an unrestricted medical license or because he lied on his application. The requirement of a hearing merely allows him to contest these allegations before termination. If, for example, these allegations were untrue, then Dr. Hannon would have been wrongfully terminated. Yet the majority distinguishes this case from Loudermill by stating that in this case, as opposed to Loudermill, there is no dispute over whether Dr. Hannon was improperly hired. But the very purpose of a hearing would be to determine if there is such a dispute. Simply put, the VA could not have denied a hearing knowing there was no dispute until a hearing has been held to determine if there was a dispute.
 
 
 39
 The majority attempts to distinguish Loudermill on three factual grounds.[1] First, the majority states that the issue of whether the plaintiffs had property interests in their positions is squarely before this Court but was not in Loudermill. While the question of property interests was not the principal issue in Loudermill, the holding by the Court that there was such an interest was not dicta. It is a necessary holding of the case and was argued before the Court. As such, I would not minimize it.
 
 
 40
 Second, the majority attempts to distinguish Loudermill on the basis that Loudermill was fired for lying while Dr. Hannon was fired for not having the necessary job qualifications. Respectfully, with the record in this case, and the Court's opinion in Loudermill, I cannot support this reading of the facts. In the present case, we cannot be certain why Dr. Hannon was fired and as we are not triers of fact, it is inappropriate for us to make this determination. An affidavit filed by the defendants points to a General Counsel's [of the VA] memo as setting forth the grounds for Dr. Hannon's termination. The memorandum expressly lists Dr. Hannon's falsification of his application as an alternative grounds for termination. Dr. Hannon asserts that this was the ground for termination, and factual disputes in a motion for summary judgment are to be construed in favor of the non-moving party, in this case Dr. Hannon. United States v. Diebold Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).
 
 
 41
 Even if we accept that Dr. Hannon was terminated because he lacked the necessary qualifications rather than for lying, the reasons for termination, in my judgment, cannot be distinguished from those in Loudermill. In Loudermill, all we are told is that Loudermill would not have been hired had he not lied on his job application. Id. We are never informed that he was fired because he lied rather than for not having the qualifications. Indeed, the fact that he would not have been hired had he not lied indicates otherwise because Loudermill could have told the truth and still not have been hired. We cannot, therefore, successfully distinguish the cases on the reasons for the employee's termination.
 
 
 42
 Finally, the majority further attempts to distinguish Loudermill by arguing that the appointment of Dr. Hannon in the instant case was illegal, whereas the appointment of the plaintiff in Loudermill might have been legal. On this basis, the majority argues that Dr. Hannon's appointment was void while Loudermill's appointment was valid. I find the majority's reasoning flawed, however, because we do not know whether Loudermill's appointment was illegal or merely imprudent. The Supreme Court in Loudermill did not examine Ohio law. More importantly, such an examination was not relevant to the Court's inquiry because either way, the fact remains that the plaintiffs in both cases actually held the jobs, legally or otherwise. In addition, Dr. Hannon's and Loudermill's expectations of continued employment were virtually identical regardless of whether Dr. Hannon's initial appointment was illegal. Arguably, both Dr. Hannon and Loudermill must have known that had their "secret" been discovered, their jobs would be in peril. Both would have had to realize that they obtained their jobs through less than accurate applications. And both had reason to believe that they might not be terminated if their secret got out: Loudermill could have believed this if the majority is correct that his appointment was not illegal; Dr. Hannon could have believed this because he possessed an unrestricted license at the time of his termination so it was legal for him to hold the job at that time.
 
 
 43
 I believe that the majority's attempt to distinguish Loudermill falls short of the mark. Based on the facts of these cases, it is my conclusion that Loudermill cannot be distinguished. Both plaintiffs could have been fired for lying or for failing to have the necessary qualifications for the job. In both cases, the government attempted to state that the employee had never been properly hired in the first place. In both cases, it is clear that the employee held the job and performed the work. And finally, in both cases, the government attempted to label the reason for termination as a reason they should not have been hired. In my view, Loudermill cannot be convincingly distinguished and we are bound to follow it as controlling Supreme Court precedent.
 
 
 44
 Dr. Hannon's expectations of continued employment absent a hearing are based on 38 U.S.C. §§ 4106 and 4110. Section 4106 provides for pre-termination hearings for employees during their two year probationary period. Subsection 4106(b) provides that a board shall review all appointments and all persons judged not to be fully qualified shall be separated from employment. Dr. Hannon was not separated during this period. After completion of the probationary period, Section 4110 governs dismissal from the VA. Section 4110 provides for a hearing when termination is for inaptitude, inefficiency, or misconduct, presumably the only times someone who had passed the probationary period could be fired. The term "inaptitude" arguably includes lack of qualifications. In addition, Section 4110 has been interpreted to cover any disciplinary action taken against a VA employee. See Neal v. Walters, 750 F.2d 347, 350 (5th Cir.1984). Even if Section 4110 does not cover Dr. Hannon, it certainly does not allow the VA to avoid the necessity of a board determination. A board determination of lack of qualifications would have been necessary had the VA found he lacked the necessary qualifications in the time Congress set forth for it to review qualifications, i.e., the probationary period. It would be anomalous to allow the VA to avoid a board determination simply because the VA failed to find Dr. Hannon not qualified during the period set aside for such findings.
 
 
 45
 The policy behind the Supreme Court's holding in Loudermill is especially compelling here. The majority would invite the government to avoid its constitutional and statutory obligations. All a federal agency would need to do to evade a Bivens action under the majority's holding, is to categorize the reasons for firing employees as reflecting why they could not be hired in the first place. No hearing would ever be necessary though the agency was bound by the statutory assurances, such as those in sections 4106 and 4110, of job security. Even if one accepts the majority's distinguishing of Loudermill on the facts, in my view the policy behind Loudermill and sections 4106 and 4110 dictate a different result. The VA here made its own determination that Dr. Hannon was not qualified. Yet this is exactly the reason why a hearing is required: a hearing would permit Dr. Hannon to refute these charges. The majority, in effect, would allow the VA to fashion a legal fiction that enables it to avoid the statutes governing its administration. I respectfully dissent.[2]
 
 
 
 [1]
 Dr. Hannon has divided his complaint into three counts. The first count clearly pleads a Bivens cause of action; the second and third counts plead violations of 38 U.S.C. §§ 4110 and 4106 respectively. It is conceivable that Dr. Hannon intended to plead implied statutory causes of action under these two sections, but Dr. Hannon does not raise this theory on appeal. Thus, we will interpret counts two and three only as pleading that sections 4106 and 4110 give plaintiff a statutory entitlement and thereby a property interest in his job
 
 
 [2]
 In 1986, approximately seven years after his initial appointment, Dr. Hannon did receive an unrestricted medical license from Minnesota. This subsequent medical license is irrelevant to the issue of whether Dr. Hannon possessed the necessary qualifications at the time of appointment
 
 
 [3]
 38 U.S.C. § 4106 provides:
 (a) Appointments of physicians, dentists, podiatrists, optometrists, and nurses shall be made only after qualifications have been satisfactorily established in accordance with regulations prescribed by the Administrator, without regard to civil-service requirements.
 (b) Such appointments as described in subsection (a) of this section shall be for a probationary period of two years and the record of each person serving under such appointment in the Medical, Dental, and Nursing Services shall be reviewed from time to time by a board, appointed in accordance with regulations of the Administrator, and if said board shall find such person not fully qualified and satisfactory such person shall be separated from the service.
 
 
 [4]
 38 U.S.C. § 4110 states:
 (a) The Chief Medical Director, under regulations prescribed by the Administrator shall from time to time appoint boards to be known as disciplinary boards, each such board to consist of not less than three nor more than five employees, senior in grade, of the Department of Medicine and Surgery, to determine, upon notice and fair hearing, charges of inaptitude, inefficiency, or misconduct of any person employed in a position provided in paragraph (1) of section 4104 of this title. The majority of employees on a disciplinary board shall be employed in the same category of position as the employee who is the subject of the charges.
 ....
 (d) A disciplinary board, when in its judgment charges are sustained, shall recommend to the Administrator suitable disciplinary action, within limitations prescribed by the Administrator, which shall include reprimand, suspension without pay, reduction in grade, and discharge from the Department of Medicine and Surgery of such person. The Administrator shall either approve the recommendation of the board, approve such recommendation with modification or exception, approve such recommendation and suspend further action at the time, or disapprove such recommendation. The Administrator shall cause to be executed such action as the Administrator approves. The decision of the Administrator shall be final.
 
 
 [5]
 The dissent argues that section 4110 could be read broadly to apply to almost any disciplinary action by the VA. While some courts have broadly interpreted section 4110 to cover almost any adverse employment action by the VA, see, e.g., Neal v. Walters, 750 F.2d 347, 350 (5th Cir.1984), we are unable to find authority for the proposition that section 4110 covers charges other than inaptitude, inefficiency, or misconduct
 
 
 [6]
 The dissent believes that a factual dispute exists as to whether the VA fired Dr. Hannon because he falsified his employment application or because he failed initially to meet statutory and regulatory qualifications. If the former is true, then Loudermill would clearly be applicable to this case. Our examination of the record reveals that the VA fired Dr. Hannon for failing to be fully qualified at the time of his appointment. As evidence of the VA's reason for terminating him, Dr. Hannon points toward a memorandum from the VA's general counsel that discusses Dr. Hannon's case. In the memorandum, the VA's general counsel alternatively explores the possibility that Dr. Hannon could be fired for falsifying his employment application and concedes that, in this event, a post-termination hearing would be necessary under the VA's own statutory procedures. The general counsel, however, proceeds to state that Dr. Hannon will be terminated for failure to meet the required qualifications at the time of his appointment, making a hearing unnecessary
 
 
 [7]
 VA regulations also require termination for any employee who fails to meet statutory requirements for employment. See DM & S Supplement to VA Manual MP-5, pt. II, p 9.09(b)
 
 
 [8]
 In support of their motion for summary judgment, the defendants attached affidavits detailing what information was made public after Dr. Hannon's dismissal. To oppose these affidavits, Dr. Hannon only offers his own unsupported affidavit broadly stating that the VA publicized his termination. As we noted before, the party not moving for summary judgment cannot simply rest on mere denials of the moving party's evidence. Dr. Hannon's unsupported statements hardly create a genuine issue of material fact on this subject
 
 
 [1]
 I recognize that the majority relies heavily on Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169 (1st Cir.1988) which distinguishes Loudermill on facts very similar to ours. To the extent I disagree with the majority, I also find Kauffman unpersuasive
 
 
 [2]
 Because I disagree with the majority's holding that the requirements for qualified immunity are met, I must consider the defendant's alternative grounds for dismissal, namely that defendants Turnage and Gronvall, both Dr. Hannon's superiors at the VA, took no personal action against Dr. Hannon and therefore cannot be held liable. See e.g. Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1356 (7th Cir.1985) (dismissing a section 1983 claim because the plaintiff did not allege the defendant had actually participated). This claim was made to the district court during the motion for summary judgment although it is not mentioned in the district court's opinion. I believe that this claim is not subject to interlocutory appeal. Where a defendant seeks a review of a denial of a motion for summary judgment on the issue of qualified immunity, "review ... is limited to the legal question of whether the law was well-established at the time of the conduct. Conner v. Reinhard, 847 F.2d 384, 388 (7th Cir.1988). This claim is, therefore, not part of the qualified immunity claim. It goes, instead to the merits of Dr. Hannon's claim. Therefore, in my view, the defendant's second basis for dismissal is not properly before this court