Mary Jean MANGAN, Appellant,

v.

Donald CULLEN, Appellee.

No. 87–5368.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1988.

Decided March 22, 1989.

James G. Ryan, Minneapolis, Minn., for appellant.

Richard S. Slowes, St. Paul, Minn., for appellee.

Before LAY and WOLLMAN Chief Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Mary Jean Mangan, an official court reporter for the third judicial district of Minnesota, filed this section 1983 suit against Donald Cullen, district administrator for Minnesota's third judicial district. Mangan claims that while acting under color of state law Cullen violated her rights under the antidiscrimination provision of the Bankruptcy Code, 11 U.S.C. § 525, and the Due Process Clause of the Fourteenth Amendment by failing to increase her salary for the years 1983 through 1986. The district court [1] granted Cullen's motion for summary judgment and Mangan now appeals. We affirm.

## I. BACKGROUND

Mangan has been an official court reporter for Minnesota's third judicial district, which encompasses Waseca County, since 1977. In 1981 Cullen came to believe that Mangan had been charging excessive transcript fees to Waseca County for several years. Cullen brought the matter to the attention of other officials and in 1982 the Waseca County Board of Commissioners filed a civil suit against Mangan seeking approximately $35,000 for the overcharges. Prior to the resolution of that suit, Mangan received a discharge of her debts in bankruptcy. Included in that discharge was Waseca County's claim for the transcript overcharges.

As district administrator, Cullen has the statutory authority, after consultation with the chief judge, to annually establish the salaries of the court reporters in the third judicial district. Minn.Stat. § 486.05 (1988). In 1982, Mangan's salary was $28,404 per year. For the years 1983 through 1986 Cullen kept Mangan's salary at that level. Prior to the beginning of each of those years, Cullen informed Mangan by letter that she was not receiving a salary increase because she had previously overcharged Waseca County for transcripts.

---

1. The Honorable Donald D. Alsop, Chief United States District Judge for the District of Minnesota.

In 1987, Cullen raised Mangan's salary by ten percent.

Mangan filed this suit against Cullen under 42 U.S.C. § 1983.[2] Mangan claims that Cullen violated her rights under 11 U.S.C. § 525(a) by refusing to increase her salary because of her alleged overbilling after the debt to Waseca County was discharged in bankruptcy. Section 525(a) provides in pertinent part:

> Except as provided in [federal statutes not relevant here], a governmental unit may not * * * discriminate with respect to employment against, a person that is or has been a debtor under this title * * * solely because such * * * debtor * * * has not paid a debt * * * that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a) (Supp. III 1985).

Further, Mangan claims that Cullen violated her Fourteenth Amendment right not to be deprived of liberty or property without due process of law.[3]

In granting Cullen's motion for summary judgment, the district court ruled that a violation of section 525(a) of the Bankruptcy Code does not provide a basis for a section 1983 action and that Mangan did not have a property or liberty interest in receiving a salary increase. Further, the district court held that even if Mangan had a property or liberty interest in a salary increase, her claim failed because Cullen was entitled to qualified immunity.

We affirm the district court's ruling in this case, but on different grounds. With respect to Mangan's claim that Cullen violated her rights under section 525 of the Bankruptcy Code, we hold that Cullen is protected by qualified immunity. We thus express no opinion in this case as to whether a section 525 violation can be redressed through a section 1983 action. Regarding

Mangan's claim that Cullen violated her rights under the Fourteenth Amendment, we agree with the district court that according to the undisputed facts in this case Cullen's actions did not deprive Mangan of a liberty interest within the meaning of the Due Process Clause and Mangan did not have a property interest in a salary increase.

## II. DISCUSSION

### A. Antidiscrimination Provision of the Bankruptcy Code

■ In reviewing the order granting summary judgment, we apply the same standard used by the district court. Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The party opposing the motion is entitled to all reasonable inferences to be drawn from the facts and the facts are to be viewed in the light most favorable to that party. *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987); Fed. R.Civ.P. 56(c). Applying that standard to Mangan's claim that Cullen violated her rights under the antidiscrimination provision of the Bankruptcy Code, we conclude that summary judgment was proper because Cullen is entitled to qualified immunity.

Qualified immunity is available to government officials performing discretionary functions if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A plaintiff attempting to defeat an official's claim of qualified immunity must show more than the existence of a clearly established right; that party must also show that the

---

**2.** 42 U.S.C. § 1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an ac-

tion at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983 (1982).

**3.** Mangan's claim that Cullen deprived her of liberty without due process is based on the allegation that Cullen's decisions not to increase her salary were coupled with injury to her reputation.

contours of the right are sufficiently clear "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). *See also Runge v. Dove*, 857 F.2d 469, 472 (8th Cir.1988).

In this case, Mangan claims that by failing to increase her salary for the years 1983 through 1986 Cullen violated her clearly established right to be free from discrimination by a governmental unit for failure to pay a debt discharged in bankruptcy. At the outset, we note that the first two of the four letters written by Cullen informing Mangan that she was not receiving a salary increase for the following year were sent before Mangan's debts were discharged. According to the undisputed facts, Cullen first notified Mangan of his decision not to increase her salary in December 1982; the second letter was sent in October 1983. Mangan's debts were discharged in November 1984. Thus, it is clear that Cullen's decisions not to increase Mangan's salary for the years 1983 and 1984 could not possibly have constituted discrimination for not having paid a debt discharged in bankruptcy because those decisions were made before the discharge occurred.

Regarding Cullen's refusal to increase Mangan's salary for the years 1985 and 1986, we believe that the law was not clearly established that his acts violated section 525. On its face, section 525(a) prohibits discrimination for failure to pay a discharged debt where the discrimination is based "solely" on the failure to pay. 11 U.S.C. § 525(a) (Supp. III 1985). While it is clear that Cullen's decisions not to raise Mangan's salary for 1985 and 1986 were in part responses to her failure to pay Waseca County for the transcript overcharges, it is also undisputed in this case that Cullen's decisions were at the same time attempts to discipline Mangan for having engaged in overcharging in the first place. In other words, Cullen had a basis for treating Mangan differently from the other official court reporters other than her failure to pay the discharged debt. Cullen claims, and Mangan does not dispute, that he concluded in the exercise of his discretion and after consultation with the chief judge that Mangan's professional performance did not merit a salary increase. Thus, Cullen could reasonably have believed that his actions complied with section 525 because he did not single her out solely because she failed to pay the discharged debt.

Accordingly, we conclude that Cullen is entitled to qualified immunity with respect to Mangan's claim of discrimination under section 525.

### B. Due Process

Mangan also claims that by causing her considerable unfavorable publicity regarding the transcript overcharges, Cullen deprived her of a liberty interest protected by the Fourteenth Amendment. We affirm the district court's grant of summary judgment on this issue because we agree that the facts as stated by Mangan, assuming them to be true, do not establish that Cullen infringed a protected liberty interest.

■ To establish a liberty interest under the Fourteenth Amendment for injury to reputation a party must show not only that he was stigmatized but also that he was stigmatized in connection with a denial of a right or status previously held under state law. *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Hughes v. Whitmer*, 714 F.2d 1407, 1417 (8th Cir.1983), *cert. denied sub nom.*, 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). Cullen's refusal to award Mangan a salary increase for four years did not cause a change in Mangan's rights or status under state law sufficient to trigger Fourteenth Amendment safeguards. Mangan does not dispute that Cullen had the discretion under state law to deny her a pay increase and she has not alleged that anything Cullen did or said has foreclosed her from future employment opportunities with the government. Accordingly, we hold that Mangan has not stated facts that even arguably show that Cullen's actions deprived her of a protected liberty interest without due process of law.

█ Mangan's claim that Cullen deprived her of a property interest is also without merit. To demonstrate that she had a protected property interest Mangan must show, by reference to state law, that she had a legitimate claim of entitlement to a salary increase. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Under Minnesota law, Mangan served as an at-will employee, Minn.Stat. § 486.01 (1988), and her salary level is within the discretion of the district administrator after consultation of the chief judge. Minn.Stat. § 486.05 (1988). The only restriction placed on the district administrator's discretion (other than the requirement of the chief judge's approval) is that each court reporter's salary must fall within a range previously established by the district administrator with the approval of a majority of the judges of the district. *Id.* Mangan does not dispute that at all times her salary has fallen within that range. Thus, under Minnesota law, Mangan had no legitimate claim of entitlement to a salary increase. Mangan's claim that Cullen's general practice of awarding yearly salary increases gave rise to an implied promise to increase her salary each year is simply without merit.

## III. CONCLUSION

We conclude that summary judgment was proper in this case. As to Mangan's claim that Cullen violated her rights under section 525 of the Bankruptcy Code, we hold that Cullen is entitled to qualified immunity. Further, we hold that according to the undisputed facts Cullen did not commit acts that infringed Mangan's property or liberty interests under the Due Process Clause. We affirm.