## LA SOCIETE GENERALE IMMOBILIERE, et al.

v.

## The MINNEAPOLIS COMMUNITY DEVELOPMENT AGENCY, et al.

### No. 4–92–CV–53.

United States District Court, D. Minnesota.

July 21, 1993.

Carter G. Phillips, Sidley & Austin, Washington, DC, Douglas A. Kelley, Kelley Law Office, Michael Curtis Mahoney, Mahoney & Hagberg, Minneapolis, MN, for plaintiffs.

Robert R. Reinhart, Edward Thomas Wahl, Oppenheimer Wolff & Donnelly, Richard Gregory Wilson, David Fulton Herr, Charles Quaintance, Jr., Maslon Edelman Borman & Brand, Michael Thomas Norton, Minneapolis, MN, for Minneapolis Community Development Agency.

Robert R. Reinhart, Edward Thomas Wahl, Oppenheimer Wolff & Donnelly, Larry Larson Warren, Michael Thomas Norton, Minneapolis City Atty., Minneapolis, MN, for City of Minneapolis.

Brian P. Short, pro se.

## ORDER

ROSENBAUM, District Judge.

A jury trial in this cause began on February 1, 1993. On February 22, 1993, the jury returned its verdict in favor of plaintiff, La Societe Generale Immobiliere (LSGI), and against the named defendants, the Minneapolis Community Development Agency (MCDA) and the City of Minneapolis. The jury awarded $8,579,935 for harm to LSGI's reputation, $22,500,000 in lost profits damages, and $3,239,804 in out-of-pocket expenses. The jury returned a verdict in favor of the defendants on the plaintiff's tortious interference claims. Consistent with the jury's verdict, judgment was entered by the Court on March 8, 1993.

Both plaintiff and defendants have timely briefed and argued post-trial motions. The defendants move for judgment as a matter of law, pursuant to Rule 50(b), Federal Rules of Civil Procedure (Fed.R.Civ.P.), or for a new trial, pursuant to Rule 59(a), Fed.R.Civ.P. In the alternative, the defendants seek remittitur. The defendants also move for cancellation of the Notice of Lis Pendens which the plaintiff filed on the property which underlies the "footprint" of the proposed development.

The plaintiff seeks an award of attorneys' fees under 42 U.S.C. §§ 1983 and 1988. In this regard, the plaintiff, on March 23, 1993, filed a Notice of Intent to Claim an Award of Attorneys' Fees, pursuant to the local rules. D.Minn.L.R. 54.3(b)(2).

## Defendants' Post-trial Motions

In their brief, the defendants raise eleven arguments in support of their motion for judgment as a matter of law.[1] Alternatively, the defendants raise 25 alleged errors of law which they claim require a new trial. Nine of these claimed errors relate to the jury instructions. To the extent that the defendants properly objected to the instructions, these issues are preserved for appeal. Seven asserted errors relate to the Court's evidentiary rulings, and the conduct of the Court and plaintiff's counsel during this ten-day trial. The Court maintains its previous rulings on these issues.

The defendants' contention that the special verdict form was ambiguous is addressed, *infra*, at footnote 3. The final eight alleged errors relate to the issues of lost profits, out-of-pocket expenses, and the award of damages under § 1983 for harm to LSGI's reputation. These issues are addressed, *infra*. The Court turns to the defendants' primary contentions.

First, the defendants claim that the Court erred in ruling that the development agreement was ambiguous. Second, the defendants assert that the Court erred in submitting LSGI's lost profits claim to the jury since—in defendants' view—lost profits were "utterly speculative." Third, defendants contend that the Court erred in submitting LSGI's § 1983 due process claims to the jury. Fourth, the defendants contend that this Court erroneously entered judgment against the City of Minneapolis because the jury's verdict was entered only against the MCDA. Finally, the defendants contend that the plaintiff is not entitled to an award of out-of-pocket expenses in addition to the lost profits damages.

### a. Contract Ambiguity

■ The defendants contend that this Court erred in ruling that the development agreement was ambiguous. Defendants contend that the Minneapolis City Council retained unfettered discretion to approve the final design treatment of the Nicollet Mall, which included the right to reject the "dome and tunnel" concept at any time. The contested language provides, in pertinent part:

> It is understood by the Developer and the MCDA that no action of the Minneapolis City Council shall be necessary to approve the form or content of any of the proposed Project Plans or Specifications except for final design treatment of the Nicollet Mall by the City Council and further except that any such proposed Project Plans or Specifications shall be modified by Developer to comply with any and all design guidelines or any and all other requirements related to the treatment of Nicollet Mall adopted by the Minneapolis City Council prior to the final approval by the MCDA of the Proposed Project Plans and Specifications....

(Tr. Ex. 3 at p. 11). The defendants conclude that this provision entitled them to reject or redesign the "dome and tunnel" concept at any time until final approval by the MCDA. In their view, they are entitled

---

1. Seven of these arguments relate to the insufficiency of the evidence to support the jury's finding of liability. The defendants also contend that LSGI lacked standing to bring its breach of contract claim under Minnesota Statutes, §§ 303.13, 303.20, and 290.371. The defendants also "reassert" all other issues raised in their previous

motions for summary judgment and directed verdict. The Court addressed these issues on the record at trial, and maintains its previous rulings. The defendants' assertion that the plaintiff's § 1983 claim was insufficient as a matter of law and was barred under the doctrine of qualified immunity is addressed, *infra*.

to judgment as a matter of law on the plaintiff's breach of contract claim.

■ The construction and effect of a contract provision is a question of law for the court unless an ambiguity exists. *Hydra–Mac v. Onan Corp.*, 450 N.W.2d 913, 916–17 (Minn.1990). An "[a]mbiguity exists when the language of a written document, by itself, is reasonably susceptible to more than one meaning." *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn.1990).

The Court maintains its previous ruling that the language cited above is ambiguous. It is not at all clear to the Court that, on the 365th day of a one-year contract, the defendants could simply reject an approved design plan. Certainly a clause of this type could reserve finish or treatment details. But the overall design plan had been approved and a concept drawing was part of the approved documents. The defendants knew that the dome and tunnel plan, with the road surface of Tenth Street and the Nicollet Mall within its footprint, was an integral part of the presentation being made to prospective anchor tenants. This design plan was appended to the development contract.

The Court found, and maintains, that it is not clear from the plain language what the parties intended in their use of the term "final design treatment." It is, perhaps, conceivable that this provision granted the defendants unfettered discretion to reject LSGI's design at any time, as the defendants contend. The Court finds, however, that it is at least as likely that the provision simply provided for final touch-up and refinement of minor issues. Because of this patent ambiguity, the interpretation of this provision was submitted to the jury.

b. Lost Profits Damages

■ The defendants contend that, because LSGI's lost profits claim is based upon a business venture which never came into existence, any award of $22,500,000 is inherently speculative. The defendants argue that the lost profits analysis provided by LSGI's expert, Harold W. Perry, was based upon conjectural estimates and assumptions. The plaintiff responds that the lost profits were demonstrated with reasonable certainty through Perry's detailed feasibility analysis.

■ Minnesota law provides that lost profits are recoverable so long as they are not speculative, remote, or conjectural. *Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 267 (Minn.1980); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1510 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993); *Cashman v. Allied Products Corp.*, 761 F.2d 1250, 1253 (8th Cir.1985). "Lost profits may be recovered if they are a natural and proximate result of the breach, and are proved with reasonable, although not absolute, certainty." *Olson v. Rugloski*, 277 N.W.2d 385, 388 (Minn.1979). "Uncertainty as to the *fact* of whether any damages were sustained at all is fatal to recovery, but uncertainty as to the *amount* is not." *Cardinal Consulting*, 297 N.W.2d at 267 (*citing El Fredo Pizza, Inc. v. Roto–Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358, 363–64 (1978) (emphasis in *El Fredo*)). Furthermore, there is "no *per se* rule that only an 'established business' can recover damages for loss of prospective profits." *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn.1977). The method of proving such damages "*depends upon the circumstances of the particular case.*" *Cardinal Consulting*, 297 N.W.2d at 267 (emphasis in original).

The defendants previously challenged LSGI's lost profits claim in a motion to dismiss filed March 11, 1991. The motion was heard by the Honorable Edward J. Devitt, United States District Judge, District of Minnesota. Judge Devitt reviewed Minnesota law on the issue of lost profits, and scrutinized the expert testimony presented by both the plaintiff and the defendants. After his review, Judge Devitt ruled against the defendants, concluding that "the evidence suggests that a jury could determine to a reasonable certainty both the fact and amount of lost profits damages." (Memorandum Order, April 4, 1991, Docket # 77 at p. 11.)

At trial, LSGI provided competent and credible expert testimony in the form of a detailed feasibility analysis to support its lost profits claim. The estimates included both a site and market analysis. On the basis of

Perry's testimony, the plaintiff sought $45.6 million in lost profits damages. The defendants cross-examined Perry, and offered five damages experts in rebuttal. The Court found, and maintains its ruling, that there was sufficient evidence upon which a jury could fairly determine both the existence and extent of LSGI's lost profits. The jury was properly instructed that it could award lost profits "based only upon a reasonable certainty and not on speculation or conjecture." (Instr. No. 47.)

The jury determined that the plaintiff proved, with reasonable certainty, lost profits in the amount of $22.5 million. The size of this figure—less than 50% of plaintiff's expert's appraisal—was supported by the evidence. The Court finds no grounds to disturb the jury's finding.

### c. LSGI's § 1983 Claims

 The defendants contend that this case, at its core, is a breach of contract case, and that the Court erred as a matter of law in submitting LSGI's § 1983 constitutional claims to the jury. The defendants contend that LSGI failed to show that the MCDA deprived the developer of a constitutionally protected property or liberty interest without due process.[2] The defendants further contend that LSGI had an adequate state law remedy, and that the record was devoid of evidence to support the $8,579,935 award for damage to LSGI's reputation.[3]

LSGI claimed that it was deprived of both a property and liberty interest, and further asserted that it was denied both procedural and substantive due process. This Court granted defendants' motion for judgment as a matter of law on LSGI's property claim, finding that LSGI's breach of contract claim provided an adequate post-deprivation state law remedy. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Zar v. South Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 465 (8th Cir. 1992); *Williams–El v. Johnson*, 872 F.2d 224, 228 (8th Cir.1989), *cert. denied*, 493 U.S. 871, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989); *Reese v. Kennedy*, 865 F.2d 186, 187 (8th Cir.1989).[4]

 The defendants contend that the Court should have similarly dismissed LSGI's procedural and substantive due process liberty claims. The Court maintains its previous determination that *Parratt* does not bar LSGI's liberty claims. *Parratt* does not apply to questions of substantive due process. *Williams–El*, 872 F.2d at 229. As to the procedural due process liberty claim, state tort law does not provide the plaintiff with a constitutionally adequate post-deprivation remedy in light of the defendants' potential immunity defenses. *See Johnson v. Dirkswager*, 315 N.W.2d 215 (Minn.1982).

 The Court found sufficient evidence to submit LSGI's liberty claims to the jury. "To establish a liberty interest under the Fourteenth Amendment for injury to reputation a party must show not only that he was stigmatized but also that he was stigmatized

---

2. The defendants raise the argument that they are entitled to qualified immunity from liability. Qualified immunity "is a question of law that 'ordinarily should be decided by the court long before trial.'" *Swenson v. Trickey*, 995 F.2d 132, 133 (8th Cir.1993) (*quoting Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)). *See also Arnott v. Mataya*, 995 F.2d 121, 123 (8th Cir.1993) ("immunity should be determined at the earliest possible stage in litigation"). The defendants neither pleaded nor argued qualified immunity prior to trial. However, in light of *Krueger v. Fuhr*, 991 F.2d 435, 438 n. 2, (8th Cir.1993), the Court notes that qualified immunity has not been extended to municipalities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Murray v. City of Sioux Falls*, 867 F.2d 472, 474 n. 2 (8th Cir.1989).

3. The defendants argue that question 9 of the verdict is ambiguous because it is unclear whether the award was based upon LSGI's property or liberty claim. This argument is hollow because the parties stipulated to the verdict form. The Court held numerous charge conferences to address the verdict form, during which the Court itself raised the very issue of which the defendants now complain. Because the defendants failed to object to the verdict form at the charge conferences or at the time of the verdict, this issue has been waived. *Arnott v. American Oil Co.*, 609 F.2d 873, 889 (8th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980); Fed.R.Civ.P. 51. This is invited error, if error it is.

4. Despite this Court's ruling, the Court submitted the property claim to the jury to avoid a possible retrial on this issue.

in connection with a denial of a right or status previously held under state law." *Mangan v. Cullen,* 870 F.2d 1396, 1399 (8th Cir.1989) (*citing Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).[5]

This Court found that the Mayor's public statements and letters in the days following November 4, 1987, constituted sufficiently egregious governmental conduct to present the substantive due process claim to the jury. Through the testimony of its president, LSGI presented compelling evidence that the Mayor's statements and letters stigmatized LSGI's reputation in the extremely small community of international real estate developers and major "anchor" retailers upon which LSGI's success depended. This harm to LSGI's reputation clearly occurred "in connection with" the deprivation of an existing contractual right. *Mangan,* 870 F.2d at 1399. The Court found LSGI's liberty claims legally sufficient, and the jury found, as a matter of fact, that the defendants' conduct amounted to a constitutional deprivation of due process. The Court declines to disturb the jury's finding.

### d. Judgment Against the City of Minneapolis

■ The defendants contend that this Court erroneously entered judgment against the City of Minneapolis because the verdict form only named the Minneapolis Community Development Agency (MCDA). This argument is a sophistry which ill-befits the city. Throughout this litigation, the parties have agreed that it was unnecessary to distinguish between the City of Minneapolis and the MCDA. The members of the MCDA board and the members of the Minneapolis City Council are the same individuals. These two public bodies functioned in complete congruity with respect to the LSGI contract. The defendants factually and tactically tried this case as if they comprised one entity. Any argument to the contrary has been waived.

### e. Out-of-Pocket Expenses Damages

■ The defendants contend that the plaintiff is not entitled to an award of out-of-pocket expenses beyond the award of lost profits. The plaintiff argues that because it did not receive the full $45.6 million in lost profits which it sought, it is not precluded from recovering out-of-pocket expenses. The Court rejects the plaintiff's argument.

■ The jury was properly instructed that, under Minnesota law, out-of-pocket expenses are considered in the calculation of lost profits damages and are not awarded in addition to a lost profits recovery. *See Cardinal Consulting,* 297 N.W.2d at 269; *Inland Products Corp. v. Donovan, Inc.,* 82 N.W.2d 691, 696 (Minn.1957).

The plaintiff's own calculations acknowledge that expenses are not recoverable in light of the lost profits award. The $45.6 million demand represented the net present value of the development project. To arrive at this figure, Perry calculated the expected profit of the project by subtracting the expected costs from the expected profits (or losses) over a ten-year period.

This argument is also rejected for much the same reason as the Court rejects any dichotomy between the City of Minneapolis and the MCDA. The plaintiff consistently maintained to this Court that, if it received a recovery for lost profits, it would have no claim for out-of-pocket expenses. The verdict form and the jury instructions were shaped by this position. The plaintiff will not be heard to assert—after the verdict—that, if it did not get one hundred cents on each dollar of its claim, it could recover out-of-pocket expenses. The jury's award of out-of-pocket expenses is vacated, and the judgment shall be reduced by $3,239,804.

---

**5.** The standard which the plaintiff must meet to prove a violation of its liberty interests varies with the factual context of the case. As examples, the standard applicable to employment cases is delineated in *Shands v. City of Kennett,* 993 F.2d 1337, 1347 (8th Cir.1993). *See also Codd v. Vegler,* 429 U.S. 624, 626–628, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977). The standard in cases involving the denial of a building permit is discussed in *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir.1986); *Lemke v. Cass County, Neb.,* 846 F.2d 469 (8th Cir.1987) (en banc); *Condor Corp. v. City of St. Paul,* 912 F.2d 215 (8th Cir.1990); and *Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102 (8th Cir.1992).

**1438**

### Lis Pendens

 The defendants move for cancellation of the lis pendens filed on the subject property, pursuant to Minnesota Statutes, § 557.02, and *Melin v. Mott,* 212 Minn. 517, 4 N.W.2d 600 (1942). Section 557.02 provides, in pertinent part, that:

> In all actions in which the title to, or any interest in or lien upon, real property is involved or affected, ... any party thereto, at the time of filing the complaint, or at any time thereafter during the pendency may file for record with the county recorder ... a notice of the pendency of the action....

Minn.Stat. § 557.02 (1988). The Court is mindful of the general rule that an appeal continues the lis pendens until final judgment is entered on appeal. *See Aldrich v. Chase,* 70 Minn. 243, 73 N.W. 161, 162 (1897). It is clear that the plaintiff has abandoned its claim for specific performance. The lis pendens is, therefore, no longer necessary to preserve the plaintiff's remedies, it simply hangs like a Damoclean sword over the heads of innocent third parties. This is neither the function of a lis pendens nor the purpose of section 557.02.

Defendants' motion to cancel the lis pendens on the subject property is granted.

### Attorneys' Fees

Plaintiff's motion for attorneys' fees is hereby referred to the Honorable Franklin L. Noel, United States Magistrate Judge, for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (3), and Local Rule 72.1(f). The magistrate is directed to issue an order setting an appropriate schedule for the submission and consideration of the motion, pursuant to Local Rule 54.3(b).

### Remittitur

 Finally, the defendants move for remittitur. The review of a jury award by a federal district court is a question of federal law. *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 488 U.S. 980, 109 S.Ct. 527, 102 L.Ed.2d 559 (1989). This Court recognizes that remittitur is only to be granted when a jury's verdict is so grossly excessive as to shock the conscience of the court. *Kientzy v. McDonnell Douglas Corp.,* 990 F.2d 1051, 1062 (8th Cir.1993); *Ouachita Nat'l Bank v. Tosco Corp.,* 716 F.2d 485, 488 (8th Cir.1983). The Court is "guided by the law of the forum state in weighing the excessiveness of the verdict." *American Business Interiors, Inc. v. Haworth, Inc.,* 798 F.2d 1135, 1146 (8th Cir.1986). Minnesota's law on the issue of lost profits damages is delineated above. With all of these factors in mind, the Court finds that remittitur is appropriate here.

Real estate development, by its very nature, involves entrepreneurial enterprise and market risk. On the evidence presented, the jury could, and did, find that the defendants' actions constituted a breach of the development contract. The jury further found that defendants' actions injured LSGI's reputation in the marketplace. The Court has concluded that the jury's verdict was not based upon speculation or conjecture.

This Court, however, is not blind to the enormous sum awarded. This is a liability which will ultimately fall upon the community's individual citizens and taxpayers. Unlike a private action between individual parties, the burden will fall not on the official wrongdoers, but on a populace which was only tangentially involved in the decision-making processes. A per capita tax of $85, even for wrongful acts of elected officials, shocks the conscience of the Court.

The Court deems it appropriate to reduce the contract and due process awards by approximately 45%. The Court directs a remittitur of the remaining damages award of $31,079,935, to $17,280,000.

Based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

1. Defendants' motion for judgment as a matter of law is denied.

2. Defendants' motion for a new trial is denied.

3. Defendants' motion for cancellation of the Notice of Lis Pendens is granted.

4. The jury's award of out-of-pocket expenses is vacated, and the judgment shall be reduced by $3,239,804.

5. Plaintiff's motion for attorneys' fees is referred to the magistrate for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).

6. Defendants' motion for remittitur is granted. The damages award of $31,079,935 shall be reduced by approximately 45% to $17,280,000.

LET JUDGMENT BE ENTERED ACCORDINGLY.