UNITED STATES of America,
Plaintiff-Appellee,

v.

DURA–LUX INTERNATIONAL COR-PORATION, an Iowa Corporation, et al., Defendants-Appellants.

DURA–LUX INTERNATIONAL CORPORATION et al., Counter-Plaintiffs-Appellants,

v.

UNITED STATES of America, and the Small Business Administrator, Counter-Defendants-Appellees.

No. 75–1357.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 4, 1975.

Decided Jan. 21, 1976.

W. Dwight Porter and Michael S. Porter, and William S. Porter, Council Bluffs, Iowa, for defendants-appellants.

Allen L. Donielson, U. S. Atty., and James R. Rosenbaum, Asst. U. S. Atty., Des Moines, Iowa, for plaintiff-appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

■ This matter comes before a screening panel of this Court pursuant to a motion by appellee United States for summary disposition of the appeal. The motion is untimely and is denied.[1] However, we deem that the questions presented do not require further argument; and on our own motion, we affirm the judgment of the District Court.[2] Local Rule 9(a), Rules of the Eighth Circuit.

The United States of America initiated this litigation on behalf of the Small Business Administration in order to recover $12,121.92, plus accruing interest on an SBA participation loan[3] which, upon default by borrower Dura-Lux International Corporation, had been assigned[4] by lender Iowa Business Devel-

1. In the motion, filed prior to our recent amendment of Local Rule 9(b), appellee argues that no substantial issues are presented on appeal and that summary affirmance is thus appropriate. The motion is not timely since it was filed several weeks after the expiration of the 15-day period from the filing of appellants' brief. We note that a motion of this character is not cognizable under Local Rule 9(b), as amended.

2. The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa.

3. The SBA enters into blanket loan guaranty agreements with local lenders. The agreements provide for "the making by Lender and the guaranteeing by SBA of loans to small business concerns in the furtherance of their respective interests and the interest of the small business economy * * *." To be covered under the blanket guaranty agreement, the loan must be approved by both the Lender and the SBA.

4. Under the blanket loan guaranty agreement, *supra* note 3, the lender has "the right to make demand in writing for the purchase by SBA of its guaranteed percentage of any loan guaranteed hereunder, provided that such loan is in default * * * and such default has continued for not less than 60 days." Within twenty days after receiving the lender's demand, the SBA "shall pay to Lender the guaranteed percentage of the amount then owing on such loan * * * and Lender shall issue to SBA a participation certificate evidencing SBA's interest." After the SBA's purchase, the Agency

opment Credit Corporation (IBDCC) to the SBA. Named as defendants were the borrower, Dura-Lux, and the individual guarantors on the loan, W. Dwight Porter and Lucille V. Porter.[5]

The defendants resisted the action, claiming that the SBA had violated certain of its statutory duties and that the manner of disbursement of the loan had been improper, and that these matters constituted a defense to recovery by the lender or his assignee. In addition, the defendants counterclaimed against the United States and the Small Business Administrator, seeking $2,510,000 in compensatory and punitive damages for losses sustained from the allegedly improper manner of loan disbursement.

In an order entered January 20, 1975, the District Court granted the plaintiff summary judgment on its claim and dismissed the counterclaim. From that order, the defendants have taken this appeal.

## I.

A brief review of the circumstances of the loan transaction is necessary to an understanding of this appeal.

As a fledgling Iowa company engaged in the production of office chair mats, Dura-Lux Corporation was in need of capital to expand its business. It applied for a loan to the Iowa Better Business Development Credit Corporation, but this institution determined that it would be unable to make a loan without a guaranty from the Small Business Administration. Accordingly, Don Albertson, the Executive Vice President of the IBDCC, began direct dealings with defendant Porter, the president of Dura-Lux, in order to prepare an application for an SBA-guaranteed loan under the

"blanket loan guaranty agreement" between the SBA and the IBDCC.

On May 20, 1970, Albertson and Porter were notified by the SBA that the application for guaranty had been approved. The total loan amount approved was $30,000. The purposes of the loan, as listed on the application, were:

Promotion and Marketing: $15,000
Machinery and Equipment: $ 5,000
Additional Inventory: $10,000

The SBA attached several conditions to the loan, including a first lien on various types of collateral, and the previously mentioned guaranty by Dwight Porter and his wife, Lucille.

The parties then proceeded to close the transaction. Pursuant to the blanket agreement between the SBA and the IBDCC, the lender was under a duty to take those "actions which shall, consistent with prudent closing practices, be required in order fully to protect or preserve the interests of Lender and SBA in the loan." The IBDCC loan committee had instructed Albertson to require Dura-Lux, as a condition to closing, to maintain a certain minimum amount in accounts receivable, inventory and/or cash as a collateral account to protect the interests of the lender and the SBA. This collateral account was to be established with the First National Bank of Council Bluffs, Iowa.

At the actual closing, a substantial dispute developed. Dura-Lux did not object to the placing of the $15,000 designated for the purchase of machinery, equipment and inventory into an escrow account, to be released as the business expanded from increased expenditures for promotion and marketing. However,

may make written demand for the transfer to SBA, without recourse, of "the note, collateral, and instruments for said loan * * *"; alternatively, the "Lender may elect to transfer the loan to SBA * * *."

In the instant case, the SBA guaranteed ninety percent of the total loan amount.

5. W. Dwight Porter is the president of Dura-Lux Corporation. Lucille V. Porter is his wife. The guaranty executed by the Porters pro-

vides, in part, that "the undersigned hereby unconditionally guarantees to Bank, its successors and assigns and to the Small Business Administration (SBA) as its interests may appear, the due and punctual payment when due, whether by acceleration or otherwise * * * of the principal of and interest on and all other sums payable * * * with respect to the note of the Debtor * * *."

it vigorously objected to the IBDCC's position that the full $15,000 for promotion and marketing could not be immediately released. The parties dispute the fact of whether Dura-Lux eventually acceded to· the establishment of a collateral account.[6]

The loan was, however, consummated. A check from IBDCC in the amount of $30,000 was issued to Dura-Lux. The company then deposited $25,000 of the proceeds with the First National Bank of Council Bluffs: $5,000 of this amount was reserved for eventual equipment purchases, and $20,000 was paid into a cash collateral account. Additionally, Dura-Lux apparently used $5,000 of the proceeds to repay a $5,000 interim "working" loan to the company which had been made by the Council Bluffs bank.

The IBDCC told Dura-Lux that it could withdraw from the cash collateral account up to eighty percent of the value of its accounts and inventory, and that it could continue this practice from month to month until the cash collateral account was exhausted. However, in practice, the company was apparently allowed to make withdrawals from the account without meeting this requirement. Thus, the plaintiff alleges (and the defendants do not effectively deny[7]), that as of July 2, 1970, two weeks after the disbursement of the $30,000, Dura-Lux had the use of all except $790 of the $15,000 earmarked for production and marketing.

As noted previously, Dura-Lux eventually defaulted in its loan payments and the entire loan agreement was assigned to the Small Business Administration. The United States, acting on behalf of the SBA, then brought this suit for the recovery of sums due plus accruing interest. In resisting the claim of the United States, the defendants' principal defense was that the restrictive method of loan disbursal amounted to a total

failure of consideration absolving them from the repayment of any funds. The restrictive manner of disbursal also formed the basis for the counterclaim: the defendants contended that the manner in which the loan was disbursed had doomed their fledgling company to financial failure, and that the counter-defendants should respond in compensatory and punitive damages for lost profits.

## II.

In awarding the United States summary judgment on its claim, the District Court did not address the merits of the defendants' defense that there had been a total failure of consideration. Rather, the District Court relied on its view that the terms of the loan authorization provided "an insufficient basis for a breach of contract claim against the Small Business Administration Administrator." On similar reasoning, the District Court rejected the defendants' counterclaim.

We affirm the judgment below, but do so without commenting upon the rationales employed by the District Court. Our affirmance rests on the conclusive evidence on summary judgment that the defendants' various substantive contentions are without merit.

The defendants' defense of failure of consideration proceeds on the argument that the manner of loan disbursement was so restrictive that they never effectively received the funds which they needed to generate business. The submissions on summary judgment indicate that this claim is without any factual merit. The defendants do not rebut the plaintiff's showing that the defendants received $14,210 of the $15,000 earmarked for promotion and marketing within two weeks of the initial date of loan disbursement. It thus can be said, as a matter of law, that substantial performance was rendered and that the defense of failure of consideration cannot

---

**6.** There is no dispute that a cash collateral account was, in fact, established. We note that the defendants were aware of the establishment of the account and yet continued to accept loan proceeds.

**7.** The defendants emphasize that they did not have immediate use of the full amount on the initial date of disbursement. Of course, this contention is undisputed.

succeed. *See* 3A *Corbin on Contracts* § 700–12. *Cf. United States v. Riley,* 340 F.Supp. 1164 (W.D.La.1972).

■ Similarly, the defendants' arguments regarding their counterclaim are without merit. The damages theory, on which they rely, posits the restrictive loan conditions as the crucial element in the decline of their business, for the lost profitability of which they are entitled to compensation. However, given the fact that the defendants received all except $790 of the promotion and marketing funds within two weeks of the initial disbursement, they cannot seriously contend that the type of minor breach arguably committed by the lender was responsible for the failure of their business. This conclusion is buttressed by the legal proposition that lost profits are generally considered unduly speculative where, as here, the business is an untried enterprise with no history of profitability. *See Lakota Girl Scout Council v. Havey Fund-Raising,* 519 F.2d 634 (8th Cir. 1975).

We conclude that there is no merit to the defendants' defense to the claim of the United States or to their counterclaim. For these reasons, the judgment of the District Court is affirmed.[8]

---

**8.** The defendants argue that the District Court erred in denying their motion for joinder of several of the parties involved in the loan transaction. In view of our holding on the merits, we find it unnecessary to comment on this issue.

The defendants' lengthy pro se submissions to this Court contain numerous other arguments which we find it either unnecessary to consider or plainly without merit.