Terry DONOVAN, Special Administrator in the matter of the Estate of Dana E. Reinartz, and Parent of David E. Reinartz, a minor, Plaintiff,

v.

CITY OF MILWAUKEE, a municipal corporation; Frederick Birts, John C.M. Bogues, Charles Homa, Jeanne Wiedmeyer, William J. Zirbes, all individually and in their official capacities as police officers of the City of Milwaukee; Robert J. Ziarnik, individually and as Police Chief of the City of Milwaukee; and ABC Insurance Company, Defendants.

Civ. A. No. 91–C–647.

United States District Court,
E.D. Wisconsin.

Nov. 20, 1992.

Kathleen Wagner, Wagner Law Offices, Madison, WI, for plaintiff.

Susan Lappen, Asst. City Atty., Milwaukee, WI, for defendants.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

On June 18, 1991, plaintiff Terry Donovan ("Donovan") commenced this action alleging that defendants violated Dana Reinartz's ("Reinartz") Fourth, Fifth, and Fourteenth Amendment rights when City of Milwaukee police officers engaged Reinartz in a high speed pursuit which ended in a collision and Reinartz's death. Presently before this court are Donovan's July 24, 1992 motion for partial summary judgment and the defendants' July 24, 1992 motion for summary judgment.

### FACTS [1]

At approximately 4:00 a.m. on June 19, 1988, defendant police officers Charles Homa ("Homa") and Jeanne Wiedmeyer ("Wiedmeyer") heard a loud noise and observed a flash of light. Homa saw Reinartz and Willie Bright on a motorcycle in the vicinity and decided to ask them if they knew anything about the noise and flash of light. Homa and Wiedmeyer engaged in a high speed pursuit of the motorcycle. Defendant police officers Frederick Birts ("Birts"), John Bogues ("Bogues") and William Zirbes ("Zirbes") set up visual deterrents or roadblocks to stop the motorcycle.[2] The chase ended when Zirbes backed his vehicle into the motorcycle, thereby causing the motorcycle to become airborne.[3] Both men on the motorcycle were killed.

### ANALYSIS

A. *Summary Judgment Standard*

This court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). The party moving for summary judgment has the burden of proving that no genuine dispute of material fact exists for trial, and this court must draw all reasonable inferences from the record in favor of the non-moving party. *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir.1990); *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989). The factual record on summary judgment consists only of sworn testimony based upon personal knowledge; conclusory allegations, whether

1. This court will present the facts as given in the plaintiff's complaint; for purposes of this decision, there is no need to go into factual details and disputes with respect to the general nature of the incident at issue.

2. The officers used their squad cars to partially block the street that the motorcycle was travel-ling on. (July 23, 1992 Birts Aff. ¶¶ 5–7; July 24, 1992 Bogues Aff. ¶¶ 5, 8, 9; July 24, 1992 Zirbes Aff. ¶¶ 10, 11.)

3. Zirbes alleges that his squad car was in a stationary position when the motorcycle hit it. (July 24, 1992 Zirbes Aff. ¶¶ 14, 15.)

contained in pleadings or set forth in affidavits, are excluded. Fed.R.Civ.P. 56(e); Fed.R.Evid. 602; *Koclanakis v. Merrimack Mut. Fire Ins. Co.,* 899 F.2d 673, 675 (7th Cir. 1990). Although some facts may be in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Koclanakis,* 899 F.2d at 675.

### B. *Plaintiff's Motion*

On July 24, 1992, Donovan filed her motion for partial summary judgment without a supporting brief. On that day, Donovan requested an additional week to file her supporting brief. On July 28, this court granted Donovan an extension until August 3 to file her supporting brief. This court has not received a supporting brief. On August 24 the defendants filed a motion to strike Donovan's motion.

On September 15, one week before this case is scheduled for trial, Donovan's attorney filed an affidavit explaining that she was unable to file a reply brief because of medical problems and a busy schedule. Donovan's attorney requests that her August 28 brief in opposition to the defendants' motion for summary judgment be treated as a supporting brief or that she be given three days to file a separate brief. This court notes that Donovan's attorney filed other documents in this court since August 3, but did not notify this court in any manner that she would not be filing a supporting brief. This court will not allow Donovan to file a brief in support of her motion for summary judgment at this late date. This court has fully considered the plaintiff's August 28 brief with respect to the issues presented in this action, and will deny Donovan's motion for the reasons discussed below in the context of defendants' motion.

### C. *Defendants' Motion*

Defendants argue that they are entitled to summary judgment because (1) the individual defendants are protected from liability by qualified immunity; (2) their conduct did not constitute a Fourth Amendment seizure; and (3) the defendant City of Milwaukee ("Milwaukee") is protected from liability because it does not have a policy or custom which violated Reinartz's rights. This court agrees with the defendants with respect to their first and third arguments. This court concludes that it is not necessary to determine whether defendants' conduct constituted a Fourth Amendment seizure, and if so, whether such a seizure was reasonable.

### 1. *Qualified Immunity*

The individual defendants argue that they are protected from civil damages by the doctrine of qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court announced the following objective test for determining when a government official is entitled to qualified immunity:

> [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The test for qualified immunity is thus "whether the law is clear in relation to the specific facts confronting the public official when .he acted." *Auriemma v. Rice,* 910 F.2d 1449, 1455 (7th Cir.1990) (*en banc*), *cert. denied,* 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991) (citing *Rackovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (*en banc*), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). The plaintiff therefore bears the burden of establishing the existence of a clearly established constitutional right by citing "[c]losely analogous cases, ... decided before the defendants acted or failed to act...." *Rackovich,* 850 F.2d at 1209 (quoting *Powers v. Lightner,* 820 F.2d 818, 821 (7th Cir.1987)).

■ Defendants argue that the law regarding Fourth Amendment rights with re-

spect to police pursuits and roadblocks was not clearly established at the time of the incident. Donovan argues that *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985),[4] represents a clear establishment of Reinartz's rights. That case, however, involved the shooting of a fleeing suspect, and did not involve the use of a high speed pursuit and roadblocks. This court does not agree with Donovan that *Garner* creates clearly established law with respect to the present action.

Donovan argues that a Milwaukee Police Department Training Bulletin regarding use of deadly force[5] informed the defendant police officers that Reinartz had protected rights:

> Deadly force may be used by anyone who believes such force is reasonably necessary to *prevent imminent death or great bodily harm to himself or a third party*. The use of deadly force solely in the defense of property is expressly prohibited.

The context of the training bulletin, however, is the use of firearms. The training bulletin does not discuss high speed pursuits or the use of roadblocks, nor does it discuss the constitutional rights of those involved in an incident involving a high speed pursuit or roadblocks.

Donovan also argues that standard operating procedures issued by the Milwaukee Chief of Police[6] informed the defendant police officers that Reinartz had protected rights:

> [T]he deliberate striking of a pursued vehicle or the use of a Department or other vehicle(s) as a stationary barricade is only permitted to be used as a last resort when:
>
> (1) The occupant(s) of the vehicle being pursued is wanted for a serious felony, or

> (2) The manner in which the pursued vehicle is being operated creates a substantial risk of serious injury or death.

Donovan argues that "[e]luding a police officer is a minor traffic violation not a felony and moreover a far cry from a serious felony." (Aug. 28, 1992 Br. at 43.) Donovan does not address the second aspect of the procedure, which discusses the use of a squad car as a roadblock for safety reasons. Additionally, the procedures do not discuss the constitutional rights of those involved in an incident involving a high speed pursuit or roadblocks. This court concludes that Donovan has not met her burden of showing that the law was clearly established at the time of the incident so that the individual officers should have known that they were violating Reinartz's constitutional rights when they engaged him in the high speed pursuit.[7]

*2. Policy*

■ A local government entity may only be liable under Title 42, Section 1983 of the United States Code, if the constitutional deprivation flows from a policy or custom of the local government. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Milwaukee argues that Donovan has failed to plead facts in her complaint to establish a policy or custom to support her theory that Milwaukee may be held liable in this action.

■ Donovan argues that Milwaukee failed to establish a policy regarding pursuit as required by Wis.Stat. § 346.03(6) (1989–90) which provides:

> Every law enforcement agency which uses authorized emergency vehicles shall provide written guidelines for its officers and employes regarding exceeding speed limits under the circumstances specified in sub. (4) and when otherwise in pursuit of

---

4. Donovan actually cites to Garner v. Memphis Police Dept., 470 U.S. 901 (1985), which is an incorrect citation. This court assumes that Donovan meant to cite to the case at 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1.

5. A copy of the training bulletin, Volume 2, Issue 6, dated June 1988, is attached to the July 22, 1992 di Grazia Aff. The cited material appears at page 1.

6. A copy of these procedures, Order No. 9491, dated January 30, 1987, is attached to the July 22, 1992 di Grazia Aff. The cited material appears at page 6.

7. In making this statement, this court is not concluding that the officers did in fact violate Reinartz's constitutional rights.

actual or suspected violators. The guidelines shall consider, among other factors, road conditions, density of population, severity of crime and necessity of pursuit by vehicle.

Donovan argues that "it was the failure to have a policy as mandated by [Wis.Stat.] 346.03(6) regarding the necessity of the chase that precipiated [sic] the collision." (Aug. 28, 1992 Br. at 44.) At various places in her brief, Donovan states that Milwaukee did have a relevant policy which was violated. This court is unsure as to which "policies" Donovan is referring to. Additionally, Donovan cites no authority which supports her argument that a failure to develop guidelines as discussed in Wis.Stat. § 346.03(6) creates liability for Milwaukee under § 1983. Donovan does argue that Milwaukee's failure to develop such guidelines indicate deliberate indifference on the part of Milwaukee. This court does not agree, and concludes that Donovan has not met her burden of establishing that Milwaukee had a policy or custom to subject it to liability in this action.

### 3. *Failure to Train*

Donovan argues that Milwaukee failed to adequately train its police officers with respect to high speed pursuits. In order to prevail on this point, Donovan must show that Milwaukee's "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).

In support of her argument, Donovan states that "Homa had not been trained as to what speeds were unreasonable and dangerous to life." (Aug. 28, 1992 Br. at 22 (citing July 13, 1992 Homa Dep. at 76–77).) The pages referenced in Homa's deposition, however, do not include a discussion of Homa's training or lack of training with respect to high speed pursuits. Donovan additionally

argues that Milwaukee "did not train the officers that high speed pursuits when the pursued vehicle was not suspected of a felony were against its own policy." (Aug. 28, 1992 Br. at 22 (citing July 7, 1992 Birts Dep. at 31–32 [8] and July 7, 1992 Bogues Dep. at 33 [9]).) The deposition references, however, do not mention Milwaukee's policy. Once again, this court is unsure as to what policy Donovan is referring to. If Donovan is referring to the standard operating procedures quoted in the discussion on qualified immunity, Donovan again ignores the second aspect of the procedure, which discusses the use of a squad car as a roadblock for safety reasons. This court concludes that Donovan has not met her burden of establishing that Milwaukee failed to train its police officers, and was deliberately indifferent in so failing to train, so that Milwaukee may be subjected to liability in this action.

Because this court is dismissing Donovan's federal claims, this court will dismiss her pendent state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). This court will also dismiss Donovan's motions in limine as moot.

**IT IS THEREFORE ORDERED** that the plaintiff Terry Donovan's July 24, 1992 motion for partial summary judgment is DENIED.

**IT IS FURTHER ORDERED** that defendants' July 24, 1992 motion for summary judgment is GRANTED and this action is DISMISSED.

**IT IS FURTHER ORDERED** that plaintiff Terry Donovan's September 15, 1992 motions in limine are DENIED AS MOOT.

---

8. The question presented to Birts, to which he answered "no," was "[i]n any of your training sessions or at any of your roll calls when policies are shared with your unit or with patrol officers, have you ever been advised that it's illegal to engage in a high speed pursuit unless you suspect the party being pursued of a felony?"

9. The question presented to Bogues, to which he answered "no," was "[h]ave you ever been advised by anyone in the City of Milwaukee Police Department that it's illegal to engage in a high speed chase unless the person you are pursuing you have reason to believe has committed a felony?"