**WESTERN PUBLISHING COMPANY, INC., Plaintiff,**

v.

**MINDGAMES, INC., Defendant.**

**MINDGAMES, INC., Plaintiff,**

v.

**WESTERN PUBLISHING COMPANY, INC., Defendant.**

Nos. 94–C–552, 94–C–998.

United States District Court, E.D. Wisconsin.

Oct. 11, 1996.

Wendi Sloane Weitman, Richard A. Saldinger, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, IL, and Joshua L. Gimbel, Michael, Best & Friedrich, Milwaukee, WI, for Plaintiff.

E. Campion Kersten, Kersten & McKinnon, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

WARREN, District Judge.

Before the Court is Western Publishing Company, Inc.'s ("Western") Motion for Partial Summary Judgment and Motion to Strike. For the following reasons, the Court holds that MindGames, Inc. ("MindGames") is hereby prevented from recovering damages for expected lost profits from a licensing agreement with Western under Arkansas law. Therefore, Western's Motion for Partial Summary Judgment is **GRANTED** and Motion to Strike is **DENIED**.

## I. BACKGROUND

This litigation results from a disputed licensing agreement between MindGames, the licensor, and Western, the licensee. MindGames seeks lost profits and compensatory damages from an alleged breach of the licensing agreement. Western now files a motion for partial summary judgment, seeking to prevent MindGames, as a matter of law, from recovering lost anticipated profits stemming from the alleged breach.

In March 1988, G. Lawrence Blackwell, III formed MindGames to promote and sell a new board game he had created called *Clever Endeavor.* Mr. Blackwell believed that *Clever Endeavor* would reach the popularity achieved by games such as *Pictionary* and *Trivial Pursuit.* After selling 30,000 copies of the game in 1989, Mr. Blackwell decided to enter into a licensing agreement with Western and Games Gang, Inc. ("Games Gang"). Under the terms of the agreement, Western

and Games Gang planned to market, manufacture, promote, distribute and sell *Clever Endeavor.* Blackwell and MindGames would receive royalties on the number of games sold. Net sales for *Clever Endeavor* in 1990, the first year of the agreement, totalled 165,000, but fell off dramatically starting in 1991, until late 1993 when Western drastically reduced prices to eliminate excess stock of the game.

■ In 1994, MindGames brought suit for breach of the marketing agreement. Among other damages, MindGames seeks $40 million as lost profits that they believe the game would have realized had it been marketed correctly. Western now brings a motion for partial summary judgment on the issue of the lost profits. Western claims that the "New Business Rule," which prevents new and unestablished business ventures from collecting lost profits as damages in breach of contract or tort cases, guides this case as a matter of law, and mandates partial summary judgment in Western's favor. The Court now addresses Western's motion.[1]

## II. LEGAL STANDARD

Summary judgment is no longer disfavored under the Federal Rules of Civil Procedure. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded as an integral part of the Federal Rules as a whole which are designed to 'secure the just, speedy and inexpensive determination of every action.'"). Federal Rule of Civil Procedure 56 requires a District Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

1. Western has also filed a Motion to Strike the affidavit of Mr. Blackwell. Motions to strike are generally disfavored and information "will not be stricken unless it is evident that it has no bearing upon the subject matter of the litigation." *Securities and Exchange Commission v. Jos. Schlitz Brewing Co.,* 452 F.Supp. 824, 833 (E.D.Wis. 1978) (quoting *Van Dyke Ford, Inc. v. Ford Motor Co.,* 399 F.Supp. 277 (E.D.Wis.1975). Both parties have submitted information that is irrelevant on the legal issue before the Court: whether Arkansas law allows a new business to recover lost profits. Nonetheless, the Court having considered the affidavit of Mr. Blackwell, concludes for the reasons that follow that there are no disputed issues of material fact precluding awarding partial summary judgment to Western. Therefore, Western's Motion to Strike is DENIED.

the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there is a *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute and that judgment should be entered in its favor. *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir.1990), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A defendant moving for summary judgment may satisfy this initial burden by pointing to a plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53. A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials," but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

In evaluating a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) (citations omitted.)

### III. ANALYSIS

#### A. The New Business Rule as Valid Law

In general, when any business tries to recover lost profits in a breach of contract action, it must prove that the profits would have occurred with "reasonable certainty" but for the actions of the party in breach. *American Fidelity Fire Ins. Co. v. Kennedy Bros. Constr. Inc.*, 282 Ark. 545, 670 S.W.2d 798 (1984). When the company seeking damages is a new business, the burden of proof to establish "reasonable certainty" rises considerably. Some states completely prevent the recovery of any profits in a new business situation. This prevention of recovery is referred to as the "New Business Rule," currently under dispute in the litigation before this Court.

The Eighth Circuit in *Hillside Enterprises v. Carlisle Corp.*, 69 F.3d 1410 (8th Cir.1995) (wine marketer sued disposable wine glass manufacturer for lost profits after manufacturer failed to ship specifically ordered number of glasses that marketer was to use in "wine-in-a-glass" venture) cites *Ferrell Constr. Co. v. Russell Creek Coal Co.*, 645 P.2d 1005, 1009–10 (Okla.1982) as an example that would satisfy this newer, higher burden of proof of lost profits. The *Hillside* court notes that the plaintiffs, in *Ferrell*, were coal mining for a finite amount of steel when the breach of contract occurred. The amount of steel limited the profits that the plaintiff should have achieved, making the profits easily discernible and relatively certain. *Hillside*, 69 F.3d at 1414. Had such a definite order not been present, the plaintiff would not have satisfied its requisite burden of certainty.

Many states adhere to the above-described approach when determining whether to award lost profits for a new business. States in the Eighth Circuit, like Missouri (*Handi Caddy, Inc. v. American Home Products Corp.*, 557 F.2d 136 (8th Cir.1977)) and Iowa (*Harsha v. State Sav. Bank*, 346 N.W.2d 791 (Iowa 1984)) recognize that the enforcement of any type of "New Business Rule" lies in the uncertainty of proving profits. With ample evidence of certainty, those states will allow evidence of lost profits to

factor into the determination of damages awards. Minnesota takes the most liberal approach to this concept. Minnesota law (*La Societe Generale Immobiliere v. Minneapolis Community Dev. Agency*, 827 F.Supp. 1431 (D.Minn.1993) *rev'd on other grounds*, 44 F.3d 629 (8th Cir.1994) and *Leoni v. Bemis Co.*, 255 N.W.2d 824 (Minn.1977)) emphasizes the lack of a *per se* rule in favor of preventing new businesses from collecting anticipated profits. The state willingly allows evidence of lost profits into court, and, according to *Olson v. Rugloski*, 277 N.W.2d 385, 388 (Minn.1979), requires the plaintiff to prove only reasonable certainty, not absolute certainty, to recover lost profits. Other states, such as Ohio and Michigan, have abandoned the *per se* "New Business Rule" in favor of a slightly more liberal approach that allows the party seeking damages an opportunity to prove those damages. *See Fera v. Village Plaza, Inc.*, 396 Mich. 639, 242 N.W.2d 372, 376 (1976); *AGF, Inc. v. Great Lakes Heat Treating Co.*, 51 Ohio St.3d 177, 555 N.E.2d 634, 638–39 (1990).

At the minimum, even states that have now abandoned a *per se* approach to the "New Business Rule" will require plaintiffs to prove, with the certainty seen in *Hillside*, that the profits in question would have occurred before they may recover. The higher burden of proof is considered a rigorous standard of certainty to meet. The Southern District of New York, a state that allows recovery for lost profits in certain cases, gives the most succinct reason for making recovery of lost profits of a new business venture extremely difficult to achieve. The New York court, stated:

> The prospective profits of a new business or enterprise are regarded as being too remote, contingent, and speculative to meet the legal standard of reasonable certainty in determining the elements of recoverable damages in an action for breach of contract or for a tort.

*International Minerals and Resources, Inc. v. Pappas*, 761 F.Supp. 1068, 1079 (S.D.N.Y. 1991) (quoting 36 N.Y.Jur.2d Damages § 110, at 193–94 (1984)), *vacated on other grounds*, 96 F.3d 586, (2d Cir.1996).

In addition, this dispute arises out of the entertainment industry which further reduces the certainty of MindGames' profits, making it more difficult to justify an award of lost profits. Even in states which do not adopt the strict application of the "New Business Rule," such as New York, the influence of the entertainment industry does not go unnoticed. In *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 502 N.Y.S.2d 131, 493 N.E.2d 234, 236 (1986), the New York Court of Appeals, in upholding the Superior Court's remittitur of a jury award for lost profits, noted the difficulty in establishing reasonable certainty for a new business. The court also found that the nature of the dispute (claiming lost profits from what would have been a sports stadium) increased uncertainty, stating, "New York has long recognized the inherent uncertainties of predicting profits in the entertainment field in general." *Id.* The Second Circuit echoed the *Kenford* decision in *Proteus Books Ltd. v. Cherry Lane Music*, 873 F.2d 502 (2d Cir.1989). The court quoted *Kenford's* assessment of the entertainment industry's effect on the uncertainty of profits in its case dealing with a book publishing dispute. *Proteus*, 873 F.2d at 510.

■ As noted earlier, some states still accept the "New Business Rule" as a *per se* measure to completely prevent the recovery of any profits. *See Stuart Park Associates Limited Partnership v. Ameritech Pension Trust*, 51 F.3d 1319, 1328 (7th Cir.1995) (Illinois law); *Springwell Dispensers, Inc. v. Hall China Co.*, 204 Ga.App. 245, 419 S.E.2d 112 (1992) (Georgia law); *Murray v. Hadid*, 238 Va. 722, 385 S.E.2d 898, 905 (1989) (Virginia law). Arkansas, the state whose law guides this case, still views the "New Business Rule" as a *per se* rule prohibiting the recovery of lost profits in a new business venture.

Based on its limited amount of case law, the state of Arkansas follows the "New Business Rule" strictly in preventing any recovery of lost profits. In *Marvell Light & Ice Co. v. General Electric Co.*, 162 Ark. 467, 259 S.W. 741 (1924), the only Arkansas case addressing the "New Business Rule," General Electric brought suit against Marvell Light

to recover over $700 for machinery sold to Marvell Light for assistance in constructing an ice plant. Marvell Light counterclaimed for profits lost during General Electric's delayed delivery of the machinery. In sustaining General Electric's demurrer to the counterclaim, the Supreme Court of Arkansas stated, "anticipated profits of the new business are too remote, speculative, and uncertain to support a judgment for their loss." *Marvell Light*, 259 S.W. at 741.

MindGames claims that *Marvell Light* is no longer good law because it is "a seventy-two-year-old procrustean case" that has not been followed since its outcome, and it has been eroded away by more recent Arkansas cases. Although *Marvell Light* has not been cited, it has not been overruled, and therefore, it remains good law. In addition, none of the cases cited by MindGames for its legal proposition involve a new business. According to MindGames, *555 Incorporated v. Leming*, 185 Ark. 13, 45 S.W.2d 18 (1932); *Jim Halsey Co. v. Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985); *Tremco, Inc. v. Valley Aluminum Products Corp.*, 38 Ark.App. 143, 831 S.W.2d 156 (1992); and *Union National Bank of Little Rock v. Mosbacher*, 933 F.2d 1440 (8th Cir.1991), *cert denied*, 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992) all supposedly erode the Arkansas Supreme Court's decision in *Marvell Light*. However, the parties seeking damages in these above-cited cases are established businesses, and consequently, their influence in the case herein is minimal. For example, in *Union National Bank*, the Eighth Circuit acknowledged that courts can award lost profits to businesses that prove those profits would have occurred with "reasonable certainty." *Union National Bank*, 933 F.2d at 1444. However, *Union National Bank* involved a furniture company that had been in existence for over forty years at the time it filed suit. Certainly, the business in *Union National Bank* did not qualify as a "new business" subject to *Marvell Light's* rule.

Also, MindGames relies on 1 Dunn, *Recovery of Damages for Lost Profits* § 4.1 (4th ed. 1992) to argue that the "New Business Rule" is an "older rule" followed by a "diminishing number of states." (MindGames' Response at p. 8.) First, and foremost, a treatise, regardless of its persuasive value, is not law. Second, MindGames neglects to point out that Dunn expressly includes Arkansas as one of those "diminishing number" of states that still follow the "New Business Rule" and gives no indication that Arkansas will overrule their current position.

■ Decisions from the Seventh Circuit and Eastern District of Wisconsin detail how federal courts interpret state law and give further reasons for following *Marvell Light*. The Eastern District of Wisconsin, adhering to the seminal decision of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), states that "[f]ederal courts in diversity actions are bound to accept the interpretations of state law by the state's highest court.... The Court's responsibility is to apply the relevant state law as it presently exists." *Jaeger v. Raymark Industries, Inc.*, 610 F.Supp. 784, 787–88 (E.D.Wis.1985); *Midwest Helicopters Airways v. Sikorsky Aircraft*, 849 F.Supp. 666, 668 (E.D.Wis.), *aff'd*, 42 F.3d 1391 (7th Cir.1994). The Seventh Circuit reinforces this approach regarding the interpretation of state law by federal courts. *See Kutsugeras v. AVCO Corp.*, 973 F.2d 1341 (7th Cir.1992) ("Under principles of *Erie v. Tompkins* [*citation omitted*], a federal court must apply the state law as declared by the highest state court or otherwise by the intermediate appellate court of the state."). These principles clearly apply in this case where the parties brought suit solely pursuant to diversity jurisdiction. *See Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir.1987) ("[W]e have already indicated our unwillingness to speculate on any trends in state law. [*Citation omitted.*] This policy applies special force to a plaintiff in a diversity case who has chosen to litigate his state law claim in federal court."); *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985) ("A party who wants a court to adopt an innovative rule of state law should litigate in state court. Federal judges are disinclined to make bold departures in areas of law that we have no responsibility for developing.").

MindGames suggests that we use the Third Circuit as a guide for how federal

courts change state law. In *In re Merritt Logan, Inc.*, 901 F.2d 349 (3d Cir.1990), the Third Circuit considered then-current New Jersey law which embraced a *per se* application of the "New Business Rule." The Court, in recognizing the recent trend of New Jersey cases and cases nationwide, overruled the old "New Business Rule" cases in favor of the modern approach to damages involving lost profits. *Merritt Logan*, 901 F.2d at 357.

However, two distinctions prevent the Court in the case herein from adopting the Third Circuit's approach to deciding the case. First, in *Merritt Logan*, New Jersey case law preceding the *Merritt Logan* decision had indicated an inkling to abandon the "New Business Rule." No recent Arkansas case has shown that Arkansas appears willing to discard the "New Business Rule." As previously discussed, all cases cited by Mind-Games involved established business gaining an opportunity to show damages. Second, the approach of the circuit courts vary in this field. The Third Circuit interpreted its role as "predict[ing] whether the New Jersey Supreme Court would follow the rule against giving a new business damages for lost profits if it were now presented with that issue in the context of this case." *Id.* Clearly, the Seventh Circuit does not use the same standard as the Third Circuit when interpreting state law. For the Court to do so in this case would result in a direct contradiction of controlling earlier cited Seventh Circuit law. In sum, the Court has no responsibility to expand or alter existing Arkansas state law.

Finally, in reference to the validity of the "New Business Rule," the Court notes a Seventh Circuit case cited by Western. In arguing against MindGames proposition that this Court follow others across the country and abandon the *per se* application of the "New Business Rule," Western points out the Seventh Circuit's attitude towards such judicial activity: "Given that Florida law governs this case, the authorities from other jurisdictions cited and argued by the parties [citations omitted] are only indirectly relevant." *Gust K. Newberg Constr. Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1368 n. 7 (7th Cir.1987). In conclusion, the decision in

*Marvell Light* is the controlling law of Arkansas. For the case herein, Arkansas law governs, and Arkansas law accepts the "New Business Rule" *per se*.

**B.  Application of the "New Business Rule"**

The Texas Court of Civil Appeals best describes what most courts look for as they distinguish between new and established businesses for purposes of applying the "New Business Rule." In *Atomic Fuel Extraction Corp. v. Slick*, 386 S.W.2d 180, 189 (Tex.Ct.Civ.App.1964), the court stated:

> An established business should be one that is in actual operation long enough to give it permanency and recognition. It should be one that has earned a profit which can be reasonably ascertained and approximated. . . . Proof of an operation of a business at a loss fails to meet the test.

The courts have used the duration of the business' existence and its record of profits to determine whether a corporation qualifies as a new business. *See Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1261 (1983) (seven months of operation not enough of a record of profitability to sustain an award of damages for anticipated profits; the court hints that two years may have been enough); *McBrayer v. Teckla, Inc.*, 496 F.2d 122 (5th Cir.1974) (plaintiff not entitled to lost profits because he was only in operation for a little over nine months and had not achieved a profit in that time); *Proteus Books, Ltd. v. Cherry Lane Music*, 873 F.2d 502 (2d Cir.1989) (company with two years of existence, but poor sales, still qualifies as a new business).

■  It appears that *Clever Endeavor* and MindGames both satisfy the two elements of the new business test. The licensing agreement that brought the parties in this suit together consummated in March of 1990. MindGames had been incorporated since March of 1988, and did not produce a product until 1989. The company decided to market the game (its sole product) in the spring of 1989, but it did not reach the market until September, 1989. (*See* Blackwell Dep. at pp. 24, 107, 168–69.) All told, *Clever Endeavor* was on the market for approximately six

months before the licensing agreement began. Additionally, in those six months, MindGames did not turn a profit. (See Western's Brief in Support of its Motion for Partial Summary Judgment, Exh. B and G.) Because *Clever Endeavor* did not have an established record of profitability, and because it had such a short lifespan, it qualifies as a new business, subject to the application of the "New Business Rule."

### C. *MindGames' Arguments Against Using the "New Business Rule"*

MindGames opposes the use of this rule because it believes *Clever Endeavor* had an established track record; because neither Western nor Games Gang was a new business; and because MindGames' royalties were pure profits.

■ MindGames' first argument has already been dismissed; as to the other two, they shall likewise be rejected. Whether Western or Games Gang qualifies as a new business is irrelevant in this case. When a court looks to award lost profits in any situation, it measures lost profits by the past profits of the party seeking the damages—not the party that caused the damages. Every case cited by the Court supports this proposition. Similarly, in determining whether to apply the "New Business Rule," the court looks to the party seeking the profits to see whether or not that party is a new business. As the Supreme Court of Arkansas noted in *Marvell Light*, "He *who is prevented from embarking in a new business* can recover no profits because there are no provable data of past business from which the fact that anticipated profits would have been realized can be legally deduced." *Marvell Light* 259 S.W. at 741 (quoting *Central Coal and Coke Co. v. Hartman*, 111 Fed. 96, 49 C.C.A. 244) (emphasis added).

As a side note, the "New Business Rule" applies to new products sold by an existing business. *See Stuart Park Associates, Ltd. v. Ameritech Pension Trust*, 846 F.Supp. 701 (N.D.Ill.1994), *aff'd*, 51 F.3d 1319, 1328 (7th Cir.1995) (Illinois law—"New Business Rule" state) (plaintiffs success with other apartment buildings did not yield damages for lost profits in a similar, but different real estate

venture); *Pennsylvania State Shopping Plazas, Inc. v. Olive*, 202 Va. 862, 120 S.E.2d 372 (1961) (plaintiff had operated 14 service stations successfully, but opening a new one still constituted a new business). *Clever Endeavor* remained on the market for only six months prior to the licensing agreement, clearly making it a new product. Therefore, even if the Court would accept MindGames' suggestion that the Court should measure the "New Business Rule" by Western and Games Gang, established businesses, the rule still applies in this case.

■ MindGames attempts to use a technicality to avoid the application of the "New Business Rule" to this case. The "New Business Rule" applies to parties seeking lost profits; MindGames claims it seeks lost *royalties*, rather than profits, and therefore, the "New Business Rule" does not apply to this case.

The Court sees this attempt by Mind-Games as a futile effort to avoid Arkansas case law. In MindGames' complaint, the company states that "[t]he breaches of the agreement by Western and Games Gang, Ltd. have caused substantial damages, both present and future, to MindGames, including loss of profits and interference with Mind-Games' business relations." (MindGames Complaint at ¶ 8.) In addition, in a February, 1996 letter from MindGames' counsel to Western's counsel, MindGames classified the damages sought as "lost future profits." (See Western's Reply Brief, Exh. D.) It appears that MindGames chose to make the distinction between profits and royalties only after realizing the strength of Western's "New Business Rule" defense.

Also, MindGames uses Corbin's definition of profits to attempt to prove the difference between profits and royalties. *See* 5 Corbin *On Contracts* § 1022, at 135–36 (1964) (profit is the full value of performance minus the cost of performance; MindGames argues that no cost of performance was taken away from the royalties, meaning it could not have been profits). In doing so, MindGames neglects Black's Law Dictionary's definition of royalties: a "share of product or profit reserved by owner for permitting another to

use the property." Black's Law Dictionary 1330 (6th ed. 1990).

Moreover, MindGames neglects persuasive case law in this area. Generally, the courts have treated lost royalties in the same manner as lost profits in damages claims. *See Oral–X Corp. v. Farnam Companies, Inc.,* 931 F.2d 667, 670 (10th Cir.1991) (reversing district court's refusal to award damages for royalties as lost profits); *In re Mid–America Corp.,* 159 B.R. 48, 55 (M.D.Fla.1993) (the speculative nature of determining lost profits precluded franchisor's recovery of damages for lost royalties).

In sum, the Court sees the difference between profits and royalties as a *de minimis* one. The important issue is that MindGames seeks the recovery of a form of compensation; for these purposes, no difference exists between royalties and profits.

### D. *Whether Granting Partial Summary Judgment to Western is Appropriate.*

■ Whether the court decides to grant summary judgment on this matter depends on whether any genuine issue of material fact related to the controlling, substantive law of the case remains to be disputed at trial. *Kendrick v. East Delavan Baptist Church,* 886 F.Supp. 1465 (E.D.Wis.1994) (Warren, J.). If the court determines that either the movant established uncontroverted facts entitling it to summary judgment or demonstrated that the non-moving party has failed to make a sufficient showing on an essential element of the case, then a grant of summary judgment is proper. *Donovan v. City of Milwaukee,* 845 F.Supp. 1312 (E.D.Wis.1992) (Reynolds, J.), *aff'd,* 17 F.3d 944 (7th Cir. 1994).

Because the Court accepts current Arkansas law as controlling, no issue of material fact regarding lost anticipated profits remains. In addition, the Court finds that MindGames has failed to meet its obligation to make a sufficient showing on any essential element relating to the attempt to seek lost profits. The law of *Marvell Light* remains valid, and under Seventh Circuit precedent, the Court must follow it. Therefore, summary judgment as a matter of law is proper in this case.

Furthermore, granting summary judgment on the issue of the "New Business Rule" is not uncommon and lends support to the Court's decision. Although most "New Business Rule" cases arise out of a court of appeals overturning the trial court's award for lost anticipated profits, occasionally the matter is dismissed at summary judgment. In *Rich v. Eastman Kodak,* 583 F.2d 435, 437 (8th Cir.1978), the Eighth Circuit upheld the Eastern District of Missouri's grant of summary judgment in a case where lost profits could not be claimed because the party seeking the recovery had no history of profitability by which to measure anticipated profits. The Eighth Circuit also upheld the Southern District of Iowa's grant of summary judgment in *United States v. Dura–Lux International Corp.,* 529 F.2d 659 (8th Cir.1976). In *Dura–Lux,* the defendant counterclaimed against the United States for lost profits. The court granted the United States' motion for summary judgment on the basis that the profits were unduly speculative since the business was "an untried enterprise with no history of profitability." *Dura–Lux,* 529 F.2d at 663.

Finally, a summary judgment dismissal of a claim for anticipated profits is not unheard of within this jurisdiction. In *Autotrol Corp. v. Continental Water Sys. Corp.,* 694 F.Supp. 603 (E.D.Wis.1988) (Gordon, J.), a case strikingly·similar to the case at hand, Judge Gordon granted summary judgment in a case applying Texas law. Texas law strictly embraces the "New Business Rule" (*See Atomic Fuel Extraction, supra* ), and Judge Gordon agreed with the defendants' claim in *Autotrol* that the plaintiff could not recover profits as a matter of law. *Autotrol,* 694 F.Supp. at 605. Because Arkansas strictly follows the "New Business Rule," no reason exists why the Court cannot follow the precedent of this District and grant summary judgment in favor of Western.

### IV. *CONCLUSION*

Based on the foregoing discussion, the Court holds that the application of Arkansas law to the undisputed facts of this case establishes that MindGames cannot, as a matter of

law, recover its lost profits from anticipated sales of *Clever Endeavor.*

**THEREFORE, IT IS HEREBY ORDERED:**

1. Western Publishing Company, Inc.'s Motion for Partial Summary Judgment is **GRANTED.**

2. Western Publishing Company, Inc.'s Motion to Strike is **DENIED.**

3. The Court has scheduled a conference call for *9:30 a.m., Monday, October 28, 1996* to address further scheduling of this case. Counsel for Western Publishing Company, Inc. is to initiate the call.